UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA


SYLVESTER EKWUNIFE,                              CIVIL ACTION

               Plaintiff,

versus                                           CASE NO.:__**1 6**____**0 14 8**__


CITY OF PHILADELPHIA, AND                        (JURY TRIAL DEMANDED)

PHILADELPHIA DISTRICT ATTORNEY'S

OFFICE,

             Defendants.


## NATURE OF THE ACTION

1.    This is a civil action pursuant to 42 U.S.C., Section 1983 and 1988, seeking

$15,000,000 in damages for the conduct of the Philadelphia District Attorney's Office in

knowingly presenting perjured testimony and deceiving the court into erroneously holding

Plaintiff over for a trial.  The prosecutor's subornation of perjury resulting from a culture

of misconduct at his office, caused Plaintiff to spend three years in jail, awaiting a trial

that would never come to pass.

2.    At the hearing to determine whether or not the Plaintiff would be bound over for a

trial, the prosecutors in this case, including Assistant District Attorney, Heba Gore, knew

or should have known that they were suborning perjury of their sole witness, (the alleged

victim of the crime that never took place) and that such would lead to a serious violation

1

of Plaintiff's constitutional rights.

3.     On January 7, 2015, after the gruelling three years of waiting and languishing in jail,  the Philadelphia Court of Common Pleas dismissed all the charges of rape and other related charges levied against this Plaintiff that landed him in jail on February 12, 2012.

4.     The prosecutors intentionally held the Plaintiff for three years in jail awaiting a trial that will not come to pass, and they could not say that there was anything that changed in the facts of the case from the day Plaintiff was arrested up until the date the case was dismissed

5.     Plaintiff's wrongful detention is not unique in the Philadelphia District Attorney's office.  There are over fifty cases spanning over twenty years of well documented instances of prosecutorial misconducts in the past decades.

6.     Because the Philadelphia District Attorney is the policy maker for the defendant, City of Philadelphia with respect to the administration of that office, and the since the D.A's unlawful policies and practices in tolerating misconducts were substantially the cause of Plaintiff's wrongful detention for three years, the City of Philadelphia is liable to Plaintiff pursuant to *Monell v. City of New York*, 436 U.S. 658 (1978), and 42 U.S.C., Section 1983.

## JURISDICTION OF THIS COURT

7.     This action arises under 42 U.S.C., Section 1983, 1985 and 1988.

2

Jurisdictoin is primarily confered to this Court pursuant to Title 28 U.S.C., Sections 1331 and 1343.

Venue is also proper in this court pursuant to Title 28 U.S.C., Section 1391.

8.     This action has been timely brought forth within the accrual period of Plaintiff's cause of action.

## PARTIES

9.     Plaintiff, Sylvester Ekwunife is a resident of the State of Pennsylvania, residing in the City of Philadelphia now and at all times prior to, during and after the occurence of the matter at hand.

10.    Defendant City of Philadelphia is a municipal corporation of the State of Pennsylvania and resident in the Eastern District of Pennsylvania.

11.    The Philadelphia District Attorney's Office is an agency of the City of Philadelphia, resident and doing business in the city of Philadelphia.

12.    The District Attorney and the Assistant District Attorneys are agents and employees of the City of Philadelphia.

13.    At all times material to this complaint, the District Attorney, Assistant District Attorney and their aiders, acted under the color of authority, statutes, ordinances, customs and usage of the state of Pennsylvania and City of Philadelphia facilities, and within the scope of their employment.

3

## THE RELEVANT FACTS IN THIS CASE

14.     On February 18, 2012, Plaintiff was arrested by the officers of the Philadelphia Police Department, Special Victims Unit branch on the allegations of sexual assault, rape, *inter alia*, of a minor child.

15.     Plaintiff's arrest stemmed from an alleged affidavit of probable cause and an arrest warrant filed by Detetctive Laura Hammond Laura of the Philadelphia Police Special Victims Unit.  Despite each of the mentioned documents identifying the pepertrator as a 54 year-old White Female, Plaintiff, a Black Male was arrested and held over for preliminary hearing and subsequently, trial.

16.     The affidavit of Probable Cause stated, emphatically, that "when (alleged victim, 'AV')  between 7 and 8 years old, she visited her grand parents at their residence(57 N. 57Th St.," and that Plaintiff "insert{ed} his finger inside of AV's vagina. He then pulled down his clothing, along with the AV's, and *inserted* his penis into AV's anus.  AV stated *she was crying,* and *Plaintiff punched her in her arm, causing her to cry out more*."(Emphasis added)

17.     The complaint filed  by Detective Laura also clearly stated that "At 57 N. 57Th Street, the {Plaintiff} engaged in deviate sexual intercourse with his 11-year-old granddaughter.....{and that [a]fter penetrating her vagina with his finger, then {he} *penetrat{ed} her anus* with his penis despite complainant's repeated refusal and resistence.."

18.     Despite complete lack of investigation in this matter, and that the

4

Police relied on information culled from the DHS to start building this case, Detective Laura omitted the fact that Plaintiff's address during the time in question was not 57 N. 57Th Street, but instead, 541 E Luray Street, Philadelphia, PA 19120, and that the AV was neither 7 nor 11 at the time of the alleged encounter.

19.    Despite the fact that AV stated to the DHS that she thinks she was 3 years old or 4 years old at the time of the alleged incident, Detetctive Laura stated in her affidavit of probable cause that AV was 7 or 8 years, and stated in her arrest warrant/complaint to a Magistrate Court, that AV was 11 years old. The much tender age could have shown the incredulouness of the allegations.

20.    Despite the fact that AV also claimed that Shamika, Plaintiff's biological daughter might have been molested as well, the police failed to follow that lead as was promised on paper ( or followed it and discovered that it too was false and discarded it without letting anyone know.)

21.    On March 7, 2012, Assistant District Attorney Heba Gore questioned the alleged Victim in order to convince the judge that Plaintiff should be held over for trial on charges of rape, *inter alia.*

22.    Despite the fact that DA Gore reviewed the notes of the DHS which was borrowed by Detective Laura to obtain her warrants, and had seen that the alleged victim had earlier chosen a different body part, e.g. that Plaintiff hit her on the arm (something the record is replete of), she still elicited testimony that she was smacked in the leg.

5

23.     Despite the fact that the alleged victim had earlier stated that she was crying and screaming out more because she was being penetrated, in court, she was asked before DA Gore whether she screamed, and she emphatically said, "No." She was also asked whether she screamed when her leg was slapped, and her answer was again, "NO."

24.     Despite the court ruling that there was no penetration in the matter based on the evidence given by the alleged victim (even after the AV claimed their was penetration by the Plaintiff), the Assistant District Attorney forged ahead with the prosecution, failing to correct any of the falsehood told by the alleged victim, using unsubstantiated three-year long detention to kill Plaintiff's spirit, hoping to coerce a confession or admision out of Plaintiff.

25.     On January 7, 2015, three years after Plaintiff was arrested and detained, the prosecutors attempted to solicit a guilty plea from Plaintiff by threatening him with a long sentence, knowing all the while that they had no evidence and did not intend nor could they prosecute the case to trial.

26.     When Plaintiff opted to continue with the trial so that "the truth would come out," the District attorney's office suddenly motioned the court to dismiss the indictment and that Plaintiff be set free

## PLAINTIFF'S INJURY AND DAMAGES

27.     Plaintiff was publicly shamed, ridiculed and humilated in front of his wife, family, friends and the public, and his reputation as a decent human being was

6

tarnished.

28.     Plaintiff incurred debts for the cost of his defense.

29.     Plaintiff suffered not just humilation in jail over the type of accusation, but was on numerous times beaten by inmates that abhorred child molesters.

30.     Plaintiff sufffered emotion distress over the loss of his freedom, human trust and his reputation, and was twice hospitalized behind all of these.

## FIRST CAUSE OF ACTION

[42 U.S.C. 1983; Due Process]

31.     Plaintiff repeats and realleges each and every allegation contained in Paragraph 1 through 30 of this Complaint, and hereby incorporates them as though fully set forth herein.

32.     Acting individually and collectively on behalf of the Philadelphia District Attorney, ADAs presented false and misleading testimony and argument against plaintiff at the preliminary hearing, during the evidence gathering, during the application for arrest warrant and affidavit of probable cause,  and failed to correct any erroneous and false evidence which would have immediately and clearly shown that there waS no case upon which Plaintiff was being arrested and held for three years.

7

33.     The aforesaid conduct operated to deprive plaintiff of his rights under

the constitution and the laws of the United States:

"{t}o timely disclose ............ all material evidence favorable to thedefense, including

impeachment evidence as well as evidence necessary *to correct false*

*or misleading testimony or argument presented by the prosecution*,

pursuant to *Brady v. Maryland*, 373 U.S. 33 1963), *Giglio v. United*

*States*, 405 US. 150, (1972), and their progeny, and the Due Process

Clauses of the Fifth and Fourteenth Amendments{.}"

34.     The aforementioned violations of Plaintiff's rights amounted to

Federal

Constitutional torts and were affected by actions taken under color of State law, and

within

the scope of the employment and authority of the ADAS involved.

35.     The aforementioned violations of plaintiff's Federal Constitutional

rights were  directly, proximately and substantially caused by conduct, chargeable to

defendant City of Philadelphia, namely, the institution and implementation of unlawful

policies, procedures, regulations, practices and/or customs concerning:

i.     The duty not to present false, misleading, improper or unreliable

evidence, testimony, statements or argument; and the continuing obligation to correct

8

false, inaccurate, incomplete or misleading evidence, testimony, statements or argument, whenever such acts occurred, and to remedy the harm caused by such acts.

        ii.        Deliberate indifference by policymaking officials at the Philadelphia

D.A.'s Office to their obligation to properly instruct, train, supervise and discipline their employees, including the ADAS involved in the prosecution of Plaintiff's case, with respect to such matters.

        36.        The aforesaid unlawful policies, procedures, regulations, practices and

customs (including the failure to properly instruct, train, supervise and for discipline employees with regard thereto) were implemented or tolerated by policymaking officials for the defendant City of Philadelphia, including, but not limited to, the District Attorney of

Philadlephia county, who knew, (a.) to a moral certainty that such policies, procedures, regulations, practices and/or customs concern issues that regularly arise in the

prosecution of criminal cases, (b.) that such issues either present employees with difficult choices of the sort that instruction, training andfor supervision will make less difficult or that the need for further instruction, training, supervision and/or discipline was demonstrated by a history of employees mishandling such situations, and c. that the wrong choice by municipal employees concerning such issues will frequently cause the deprivation of the constitutional rights of a criminal accused and cause him constitutional

9

injury.

37.     Despite their knowledge of said policies, procedures, regulations, practices andfor customs, the supervisory and policymaking officials of the defendant City, as a matter of policy, perpetuated, or failed to take preventive or remedial measures to terminate, said policies, procedures, regulations, practices andfor customs, did not discipline or otherwise properly supervise the individual personnel who engaged in them, and did not adequately instruct, train and/or supervise such personnel with regard to the proper constitutional and statutory requirements in the exercise of their authority.

38.     Instead, the aforementioned policy-making officials sanctioned the policies, procedures, regulations, practices and/or customs, described above, with a deliberate indifference to the effect of said policies, procedures, regulations, practices and/for customs upon the constitutional rights of residents and citizens of the State of Philadelphia

39.     The unlawful policies, procedures, regulations, practices and/or customs of the defendant City in withholding evidence favoring criminal defendants, in presenting false, misleading or improper evidence, testimony or argument at criminal trials, and in condoning, sanctioning, covering up and ratifying such misconduct, is exemplified by an extraordinary history of appellate decisions reversing criminal convictions obtained by the Philadelphia District Attorney's Office.

40.     The aforesaid unlawful policies, procedures, regulations, practices and/or customs of defendant City were individually and collectively a substantial factor in

bringing about the violations of plaintiffs rights under the Constitution and laws of the
United States and in causing his conviction, imprisonment and related damages.

41.     Under the principles of municipal liability for federal civil rights
violations, the District Attorney of Philadelphia(or his authorized delegates) has final
managerial responsibility for training, instructing, supervising and disciplining attorneys
and other employees in his office regarding their conduct in the prosecution of criminal
matters.

42.     The District Attorney of Philadelphia, personally and/or through his
authorized delegates, at all relevant times had final authority, and constituted a City
policymaker for whom the City is liable, with respect to such conduct.

43.     During all times material to this Complaint, the Philadelphia
District Attorney owed a duty to the public at large and to plaintiff, which he knowingly
and intentionally breached, or to which he was deliberately indifferent, to implement
policies, procedures, customs and practices adequate to deter and to avoid conduct by his
subordinates violating the aforementioned constitutional rights of criminal defendants and
of other members of the public.

44.     By virtue of the foregoing, Defendant City of Philadelphia is liable
for having substantially caused the foregoing violations of plaintiffs constitutional rights
and his  injuries.

45.     WHEREFORE, Plaintiff demands judgment against Defendant for
compensatory damages in the amount of $15,000,000; and for pre- and post judgment

11

interest pursuant to 42 U.S.C., 1988, and also for any such other and further reilief as this

Court may deem proper and just under all the circumstances herein.

Respectfully Submitted:

Sylvester Ekwunife, Pro Se

Plaintiff