UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA


SYLVESTER EKWUNIFE,                    CIVIL ACTION

                    Plaintiff,

versus                                 CASE NO.:   16-cv-148

City of Philadelphia, Heba Gore of          (JURY TRIAL DEMANDED)

Philadelphia District Attorney's Office,individually and

and as an official; Detetctive Laura Hammond Laura

of the Philadelphia Police Special Victims Unit, individually

and as an official.

                    Defendants.


### AMENDED COMPLAINT

1.     This is a civil action pursuant to 42 U.S.C., Section 1983 and 1988, seeking

$15,000,000 in damages for the conduct of Detetctive Laura Hammond Laura of the

Philadelphia Police Special Victims Unit in willfully preparing an affidavit of probable

cause and an arrest warrant based on perjured or false evidence, and Assistant District

Attorney, Heba Gore of  the Philadelphia District Attorney's Office in knowingly

presenting perjured testimony and deceiving the court into erroneously holding Plaintiff

over for a trial.  Such conducts from both named individuals(acting under the color of

authority), including but not limited to the use of false evidence, perjured evidence and

subornation of perjury resulted from a culture of  misconduct at both the Philadelphia

1

Police Department and at the Philadelphia District Attorney's office, caused Plaintiff to spend three years in jail, awaiting a trial that would never take place. Plaintiff was also humiliated, his reputation tarnished and he was repeatedly harrassed and beaten in prison due to the nature of his charges.

## JURISDICTION OF THIS COURT

2.     This action arises under 42 U.S.C., Section 1983, 1985 and 1988. Jurisdictoin is primarily confered to this Court pursuant to Title 28 U.S.C., Sections 1331, 1332 and 1343.  There is also a pendent jurisdiction claim herein.

Venue is also proper in this court pursuant to Title 28 U.S.C., Section 1391.

3.     This action has been timely brought forth within the accrual period of Plaintiff's cause of action.

## PARTIES

4.     Plaintiff, Sylvester Ekwunife is a resident of the State of Pennsylvania, residing in the City of Philadelphia now and at all times prior to, during and after the occurence of the matter at hand.

5.     Defendant City of Philadelphia is a municipal corporation of the State of Pennsylvania and resident in the Eastern District of Pennsylvania.

6.     Detective Laura Hammond Laura is employed with the Philadelphia Police, Special Victims Unit, doing business in the city of Philadelphia.

2

7.      Heba Gore is an Assistant United States Attorney employed by the Office of the District Attorney and also an  agents and employee of the City of Philadelphia.

### THE RELEVANT FACTS IN THIS CASE

8.      On February 18, 2012, Plaintiff was arrested by the officers of the Philadelphia Police Department, Special Victims Unit branch on the allegations of sexual assault, rape, *inter alia*, of a minor child.

9.      Plaintiff's arrest stemmed from an alleged affidavit of probable cause and an arrest warrant filed by Detetctive Laura Hammond Laura of the Philadelphia Police Special Victims Unit on February 14, 2012.  Despite each of the mentioned documents identifying the pepertrator as a 54 year-old White Female, Plaintiff, a Black Male was arrested and held over for preliminary hearing and subsequently, trial.

10.     The affidavit of Probable Cause stated, emphatically, that "when (alleged victim, 'AV') was between 7 and 8 years old, she visited her grand parents at their residence(57 N. 57Th St.," and that Plaintiff "insert{ed} his finger inside of AV's vagina. He then pulled down his clothing, along with the AV's, and *inserted* his penis into AV's anus. AV stated *she was crying,* and *Plaintiff punched her in her arm, causing her to cry out more*."(Emphasis added)

11.     The complaint filed  by Detective Laura also clearly stated that "At 57 N. 57Th Street, the {Plaintiff} engaged in deviate sexual intercourse with his 11-year-old granddaughter.....{and that [a]fter penetrating her vagina with his finger, then {he} *penetrat{ed} her anus* with his penis despite complainant's repeated refusal and

3

resistence.."

12.     Despite complete lack of investigation in this matter, and that the Police relied on information culled from the DHS to start building this case, Detective Laura omitted the fact that Plaintiff's address during the time in question was not 57 N. 57Th Street, but instead, 541 E Luray Street, Philadelphia, PA 19120, and that the AV was neither 7 nor 11 at the time of the alleged encounter. And yet she failed to correct the crucial facts.

13.     Despite the fact that AV stated to the DHS that she thinks she was 3 years old or 4 years old at the time of the alleged incident, Detetctive Laura stated in her affidavit of probable cause that AV was 7 or 8 years, and stated in her arrest warrant/complaint to a Magistrate Court, that AV was 11 years old. The much tender age could have shown the incredulouness of the allegations, yet no correction of the blatant error was made to the judge.

14.     Despite the fact that AV also claimed that Shamika, Plaintiff's biological daughter might have been molested as well, the police failed to follow that lead as was promised on paper ( or followed it and discovered that it too was false and discarded it without letting anyone know.)

15.     On March 7, 2012, Assistant District Attorney Heba Gore questioned the alleged Victim in order to convince the judge that Plaintiff should be held over for trial on charges of rape, *inter alia.*

16.     Despite the fact that DA Gore reviewed the notes of the DHS which

4

was borrowed by Detective Laura to obtain her warrants, and had seen that the alleged
victim had earlier chosen a different body part, e.g. that Plaintiff hit her on the arm
(something the record is replete of), she still elicited testimony that she was smacked in
the leg.

17.        Despite the fact that the alleged victim had earlier stated that she was
crying and screaming out more because she was being penetrated, in court, she was asked
before DA Gore whether she screamed, and she emphatically said, "No." She was also
asked whether she screamed when her leg was slapped, and her answer was again, "NO."

18.        Despite the court ruling that there was no penetration in the matter
based on the evidence given by the alleged victim (even after the AV claimed their was
penetration by the Plaintiff), the Assistant District Attorney forged ahead with the
prosecution, failing to correct any of the falsehood told by the alleged victim, using
unsubstantiated three-year long detention to kill Plaintiff's spirit, hoping to coerce a
confession or admision out of Plaintiff.

19.        At the hearing to determine whether or not the Plaintiff would be
bound over for a trial, the  Assistant District Attorney, Heba Gore, knew or should have
known that she was suborning perjury of her sole witness, (the alleged victim of the crime
that never took place) and that such would lead to a serious violation of Plaintiff's
constitutional rights.

20.        The prosecutors intentionally held the Plaintiff for three years in jail
awaiting a trial that will not come to pass, and she could not say that there was anything

5

that changed in the facts of the case from the day Plaintiff was arrested up until the date the case was dismissed

21.     Plaintiff's wrongful detention is not unique in the Philadelphia District Attorney's office.  There are over fifty cases spanning over twenty years of well documented instances of prosecutorial misconducts in the past decades.

22.     Because the Philadelphia District Attorney is the policy maker for the defendant, City of Philadelphia with respect to the administration of that office, and the since  D.A's unlawful policies and practices in tolerating misconducts were substantially the cause of Plaintiff's wrongful detention for three years, the City of Philadelphia is liable to Plaintiff pursuant to *Monell v. City of New York*, 436 U.S. 658 (1978), and 42 U.S.C., Section 1983.

23.     On January 7, 2015, three years after Plaintiff was arrested and detained, the prosecutor attempted to solicit a guilty plea from Plaintiff by threatening him with a long sentence, knowing all the while that she had no evidence and did not intend nor could she prosecute the case to trial.

24.     When Plaintiff opted to continue with the trial so that "the truth would come out," the District attorney's office suddenly motioned the court to dismiss the indictment and that Plaintiff be set free

### PLAINTIFF'S INJURY AND DAMAGES

25.     Plaintiff was publicly shamed, ridiculed and humilated in front of his

6

wife, family, friends and the public, and his reputation as a decent human being was tarnished.

26.     Plaintiff incurred debts for the cost of his defense.

27.     Plaintiff suffered not just humilation in jail over the type of accusation, but was on numerous times beaten by inmates that abhorred child molesters.

28.      Plaintiff sufferred emotion distress over the loss of his freedom, human trust and his reputation, and was twice hospitalized behind all of these.

## FIRST CAUSE OF ACTION

[42 U.S.C. 1983; Due Process]

29.     The conduct of the Detective Laura Hammond Laura in presenting false evidence in other to obtain an arrest warrant constituted a serious violation of Plaintiff's constitutional and civil rights which caused Plaintiff to lose his freedom for three years.

30.     The fact that Detective Laura Hammond Laura knew or should have known that she was relying on unsubstantiated evidence to prepare a probable cause affidavit caused Plaintiff to be falsely arrested and falsely imprisoned for three years in violation of his federally, and state guaranteed rights

31.     The fact that District Attorney Heba Gore, knowing that there was no truth behind her witnesses' testimony, and that there was no probable cause to  hold Plaintiff over for trial, and yet pedalled those falsehoods, and even surborned perjury in other for the magistrate judge to find probable cause to hold Plaintiff, violated Plaintiff's

federally and state, guaranteed constitutonal rights.

32.  These actions of Heba Gore, cause Plaintiff to be deprived of life and liberty for three years, risking his life behind bars for the type of offense levied against him

33.      Plaintiff repeats and realleges each and every allegation contained in Paragraph 1 through 37 of this Complaint, and hereby incorporates them as though fully set forth herein.

34.      Acting individually and collectively on behalf of the Philadelphia District Attorney, Heba Gore, false and misleading testimony and argument against plaintiff at the preliminary hearing, during the evidence gathering, during the application for arrest warrant and affidavit of probable cause,  and failure to correct any erroneous and false evidence which would have immediately and clearly shown that there was no case upon which Plaintiff was being arrested and held for three years.

35.      The aforesaid conduct operated to deprive plaintiff of his rights under the constitution and the laws of the United States:

"{t}o timely disclose ............ all material evidence favorable to the defense, including impeachment evidence as well as evidence necessary *to correct false or misleading testimony or argument presented by the prosecution*, pursuant to *Brady v. Maryland*, 373 U.S. 33 1963), *Giglio v. United States*, 405 US. 150, (1972), and their progeny, and the Due Process Clauses of the Fifth and Fourteenth Amendments{.}"

8

36.     The aforementioned violations of Plaintiff's rights amounted to Federal

Constitutional torts and were affected by actions taken under color of State law, and within

the scope of the employment and authority of Heba Gore and Laura Hammond Laura.

37.     The aforementioned violations of plaintiff's Federal Constitutional rights were  directly, proximately and substantially caused by conduct, chargeable to defendant City of Philadelphia, namely, the institution and implementation of unlawful policies, procedures, regulations, practices and/or customs concerning:

i.     The duty not to present *false*, misleading, improper or *unreliable evidence*, testimony, statements or argument; and the continuing obligation to correct false, inaccurate, incomplete or misleading evidence, testimony, statements or  argument, whenever such acts occurred, and to remedy the harm caused by such acts.

ii.     Deliberate indifference by policymaking officials at the Philadelphia D.A.'s Office and the Philadelphia Police, to their obligation to properly instruct, train, supervise and discipline their employees, including the ADA involved in the prosecution of Plaintiff's case, with respect to such matters.

38.     The aforesaid unlawful policies, procedures, regulations, practices and  customs (including the failure to properly instruct, train, supervise and for discipline

9

employees with regard thereto) were implemented or tolerated by policymaking officials

for the defendant City of Philadelphia, including, but not limited to, the District Attorney

of Philadelphia county, who knew, (a.) to a moral certainty that such policies, procedures,

regulations, practices and/or customs concern issues that regularly arise in the prosecution

of criminal cases, (b.) that such issues either present employees with difficult choices of

the sort that instruction, training and/or supervision will make less difficult or that the

need for further instruction, training, supervision and/or discipline was demonstrated by a

history of employees mishandling such situations, and c. that the wrong choice by

municipal employees concerning such issues will frequently cause the deprivation of the

constitutional rights of a criminal accused and cause him constitutional injury.

      39.     Despite their knowledge of said policies, procedures, regulations,

practices and/or customs, the supervisory and policymaking officials of the defendant

City, as a matter of policy, perpetuated, or failed to take preventive or remedial measures

to terminate, said policies, procedures, regulations, practices and/or customs, did not

discipline or otherwise properly supervise the individual personnel who engaged in them,

and did not adequately instruct, train and/or supervise such personnel with regard to the

proper constitutional and statutory requirements in the exercise of their authority.

      40.     Instead, the aforementioned policy-making officials sanctioned the

policies, procedures, regulations, practices and/or customs, described above, with a

deliberate indifference to the effect of said policies, procedures, regulations, practices

and/for customs upon the constitutional rights of residents and citizens of the State of

Philadelphia

41.     The unlawful policies, procedures, regulations, practices and/or customs of the defendant City in withholding evidence favoring criminal defendants, in presenting false, misleading or improper evidence, testimony or argument at criminal trials, and in condoning, sanctioning, covering up and ratifying such misconduct, is exemplified by an extraordinary history of appellate decisions reversing criminal convictions obtained by the Philadelphia District Attorney's Office.

42.     The aforesaid unlawful policies, procedures, regulations, practices and/or customs of defendant City were individually and collectively a substantial factor in bringing about the violations of plaintiffs rights under the Constitution and laws of the United States and in causing his conviction, imprisonment and related damages.

43.     Under the principles of municipal liability for federal civil rights violations, the District Attorney of Philadelphia(or his authorized delegates) has final managerial responsibility for training, instructing, supervising and disciplining attorneys and other employees in his office regarding their conduct in the prosecution of criminal matters.

44.     The District Attorney of Philadelphia, personally and/or through his authorized delegates, at all relevant times had final authority, and constituted a City policymaker for whom the City is liable, with respect to such conduct.

45.     During all times material to this Complaint, the Philadelphia District Attorney owed a duty to the public at large and to plaintiff, which he knowingly

11

and intentionally breached, or to which he was deliberately indifferent, to implement policies, procedures, customs and practices adequate to deter and to avoid conduct by his subordinates violating the aforementioned constitutional rights of criminal defendants and of other members of the public.

46.     Defendant City of Philadelphia, as a matter of policy and practice, has intentionally and deliberately failed to adequately discipline, train or otherwise direct police officers concerning the right of citizens, thereby causing the defendant officers in this case to engage in the unlawful conduct described above.

47.     Defendant City of Philadelphia, as a matter of policy and practice, has intentionally and deliberately failed to properly sanction or discipline police officers, including the defendants in this case, for violations of the constitutional rights of citizens, thereby causing police, including defendants in this case, to engage in unlawful conduct.

49.     Defendant City of Philadelphia, as a matter of policy and practice, has intentionally and deliberately failed to sanction or discipline police officers, including defendants in this case, who are aware of and subsequently conceal violations or the constitutional rights of citizens by other police officers, thereby causing and encouraging police, including defendants in this case, to engage in unlawful conduct.

50.     By virtue of the foregoing, Defendant City of Philadelphia is liable for having substantially caused the foregoing violations of plaintiffs constitutional rights and his  injuries.

51.     And as per the pendent actions against the above named entities and individuals(to wit, Heba Gore, and Laura Hammond Laura), it should be noted that

"Philadelphia determined in 1962 that it was in the interest of its citizens and within the financial abilities of the City to compensate persons injured by the negligence or willful misconduct of its employees. That decision was reevaluated in 1971 and the City reconfirmed its determination that the balance favored compensation of victims when the actions of police officers were the alleged cause of the injury. Although this all occurred during the time of judicially-created governmental immunity, the range of conduct which was protected by governmental immunity at that time was substantially equivalent to that now protected by statute. Thus, there is no reason to believe that the waiver enacted by the City Council of Philadelphia in 1962 and 1971 is not fully applicable today. Accordingly, I will deny the City's motion to dismiss the pendent state law claims with prejudice. However, in light of the dismissal of the federal question claims against the City of Philadelphia, I will decline to exercise pendent jurisdiction of the state law claims. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)." *See BORENSTEIN v. CITY OF PHILADELPHIA*, 595 F.Supp. 853 (1984)

52.     WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages in the amount of $15,000,000; and for pre- and post judgment interest pursuant to 42 U.S.C., 1988, and also for any such other and further relief as this Court may deem proper and just under all the circumstances herein.

Respectfully Submitted:

Sylvester Ekwunife, Pro Se

Plaintiff

13