IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SYLVESTER EKWUNIFE, : | |
| Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 16-0148 |
| CITY OF PHILADELPHIA, *et al.*, : | |
| Defendants : | |

MEMORANDUM OF LAW IN SUPPORT OF DISTRICT
ATTORNEY R. SETH WILLIAMS AND FORMER ASSISTANT
DISTRICT ATTORNEY HEBA GORE'S MOTION TO DISMISS

                                    Michael Scalera
                                    Assistant District Attorney
                                    PHILADELPHIA DISTRICT ATTORNEY'S OFFICE
                                    Three South Penn Square
                                    Philadelphia, PA 19107
                                    michael.scalera@phila.gov
                                    (215) 686-5774
                                    *Attorney for Defendants District Attorney R. Seth*
                                    *Williams and former-ADA Heba Gore*

Date: September 6, 2016

## I.     INTRODUCTION

Plaintiff's third amended complaint brings claims against District Attorney R. Seth Williams (in his official capacity) and former Assistant District Attorney Heba Gore (in her individual and official capacities), alleging a conspiracy claim under 42 U.S.C. § 1985 and, possibly, a claim under 42 U.S.C. § 1983.  *See generally* 3d Am. Compl., ECF No. 19.  The claims are similar to those dismissed by the Court pursuant to 28 U.S.C. § 1915(e).  *See* Jan. 20, 2016 Order, ECF No. 2 (dismissing claims against Philadelphia District Attorney's Office); March 1, 2016 Order, ECF No. 5 (dismissing claims against Heba Gore).  The Court's Order directed that "an amended complaint is to be filed *against the remaining defendants*."  March 1, 2016 Order (emphasis added).  That notwithstanding, plaintiff has again attempted to bring claims against the District Attorney[1] and former ADA Heba Gore (collectively, the "DA Defendants").  But even if the DA Defendants had not already been dismissed from this suit, dismissal with prejudice is appropriate here.  The third amended complaint's threadbare allegations fail to state a claim for relief; accordingly, the DA Defendants' motion to dismiss should be granted, and leave to amend should be denied as futile.

## II.    BACKGROUND

The facts in this action are taken from the complaint and are presumed true for purposes of this motion.  Separated from legal conclusions and speculation, as is required in a motion to dismiss, the complaint alleges that on February 18, 2012, the Philadelphia Police Department

---

[1] The initial complaint brought claims against the Philadelphia District Attorney's Office; the most recent complaint instead brings its claims against the District Attorney in his official capacity. *Compare* Compl. ¶ 1, ECF No. 3, *with* 3d Am. Compl. ¶ 8.  But the difference is purely semantic: a claim against a municipal or agency employee in his or her official capacity is the same as a claim against the agency or municipality itself.  *See Whitfield v. City of Phila.*, 587 F. Supp. 2d 657, 665 n.13 (E.D. Pa. 2008) (Robreno, J.).

(the "PPD") arrested plaintiff on charges of sexual assault and rape of a minor child.  3d Am. Compl. ¶ 15.  In January 2015, the District Attorney dismissed the charges against plaintiff, and the Court of Common Pleas expunged his record four months later.  *Id.* ¶¶ 16-17.  Plaintiff further alleges that there were errors in the affidavit of probable cause, *id.* ¶¶ 20, 16.2,[2] as well as in the criminal complaint filed by the PPD.  *Id.* ¶ 17.2.  Finally, the third amended complaint alleges that the PPD failed to investigate the case against plaintiff, failed to interview plaintiff, and ignored evidence that plaintiff's accusers were not credible.  *Id.* ¶¶ 18.2-20.2.

Plaintiff also alleges somewhat cryptically that ADA Gore had a "duty to investigate the facts of the matter brought to her attention for prosecution.  Failing to do so, or deliberately in her administrative capacity used false of [sic] perjured testimony to detain a defendant for trial violates that person's rights, as in this case where Plaintiff had to sit in jail for three years."  *Id.* ¶ 36.  According to plaintiff, ADA Gore "known [sic] or should have known that there were falsities in the case, and should have moved to correct those falsities. . . . Yet knowing all of these [sic] early on, she deliberately allowed the Plaintiff to remain in jail while no further information or evidence was being gathered to prosecute the case."[3]  *Id.* ¶ 37.

As for the District Attorney, the third amended complaint alleges no facts at all.  Instead, it simply recites conclusions that, for example, "Defendant Seth Williams conspired with

---

[2] An error in the third amended complaint's numbering caused some paragraph numbers to be used twice.

[3] As an aside, it is curious that plaintiff did not move to dismiss the criminal complaint pursuant to Pennsylvania's speedy-trial rule or the Sixth Amendment's guarantee of a speedy trial.  *See, e.g.*, *Commonwealth v. Colon*, 87 A.3d 352, 361 (Pa. Super. 2014) (vacating judgment of sentence under Pa. R. Crim. P. 600 due to nearly three-year delay between criminal complaint and trial).

2

Defendants Gore, Hammond and Carter, to violate plaintiff's aforementioned rights," *id.* ¶ 34, and the District Attorney's Office followed "unlawful policies and practices in tolerating misconducts [sic], failure to train, supervise and discipline." *Id.* ¶ 39.

As the Court itself observed in its previous orders dismissing the claims against the DA Defendants, and as demonstrated below, these allegations fail to state a claim for relief.

## III.     ARGUMENT[4]

As a preliminary matter, the DA Defendants are named only in Counts IV and V of the third amended complaint, with the remainder of the counts directed at the City of Philadelphia and members of the Philadelphia Police Department ("PPD"). Counts IV and V allege violations of 42 U.S.C. § 1985, although paragraph 39 in Count IV states that "the city of Philadelphia is liable to Plaintiff pursuant to *Monell v. City of New York*, 436 U.S. 658 (1978) and 42 U.S.C., Section 1983." 3d Am. Compl. ¶ 39. Given that this appears in the § 1985 count, it is unclear

---

[4] Under the well-established legal standard for a motion to dismiss under Rule 12(b)(6), the complaint must contain sufficient factual matter, accepted as true, to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action . . . do not suffice." *Id.* Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

The Third Circuit has set forth a two-part test for analyzing a motion to dismiss under Rule 12(b)(6). First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

whether this is an attempt to allege a § 1983 claim against the DA Defendants. Similarly, the *Monell* claim found in Count III is directed at the City, but it contains allegations that the City failed to train "the lawyers from the district attorney's office. *Id.* ¶¶ 31-33. Because the captions and allegations in Counts IV and V indicate that plaintiff is alleging a § 1985 claim against the DA Defendants, that is the primary focus of this motion to dismiss.[5] In the interest of completeness, however, the DA Defendants will briefly explain why a § 1983 claim against the DA Defendants would fail in any event.

### A. The third amended complaint fails to allege a § 1985 violation by the DA Defendants.

Plaintiff alleges no facts to establish a violation of § 1985 by the DA Defendants. But even if he had, the Third Circuit has made clear that state and municipal officials cannot conspire with each other if they are acting within the scope of their duties. Accordingly, plaintiff's § 1985 claims should be dismissed with prejudice.

#### i. *Plaintiff's allegations fail to state a claim under any subsection of § 1985.*

Section 1985 is composed of three subsections. The Third Circuit has observed that "section 1985 is a paradigm of poor draftsmanship." *Heffernan v. Hunter*, 189 F.3d 405, 409 (3d

---

[5] Further complicating matters, Count V appears to be an amalgam of a § 1985 claim and a state-law intentional infliction of emotional distress claim. To the extent plaintiff brings the latter claim against the DA Defendants in their official capacities, it is barred by the Pennsylvania Tort Claims Act, which shields local agencies and municipalities from liability "for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. Cons. Stat. Ann. § 8541. And to the extent that plaintiff alleges an intentional infliction of emotional distress claim against former ADA Gore in her individual capacity, she is shielded by absolute immunity, as discussed *infra*.

Cir. 1999); *see also id.* at 410 (expressing "some perplexity with the convoluted, rambling and largely unstructured language of the 1871 Act and its 1874 codification"). It is "[a]lmost Kantian in length and complexity," *id.* at 409, which "make[s] it somewhat difficult to parse." *Kush v. Rutledge*, 460 U.S. 719, 724 (1983). That notwithstanding, it is clear that the third amended complaint fails to state a claim under any of the three subsections.

The statute in full states that:

(1) If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

(2) If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection

5

>of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C.A. § 1985.  After noting the difficulty of parsing the language of § 1985, the Supreme Court did precisely that in *Kush*, stating that § 1985 proscribes conspiracies that interfere with five broad classes of activities:  "(a) the performance of official duties by federal officers; (b) the administration of justice in federal courts; (c) the administration of justice in state courts; (d) the private enjoyment of 'equal protection of the laws' and 'equal privileges and immunities under the laws'; and (e) the right to support candidates in federal elections." *Kush*, 460 U.S. at 724 (quoting 42 U.S.C. § 1985).  The Court observed that three of these five categories relate to institutions and processes of the federal government:  namely, § 1985(1); the first portion of § 1985(2), which involves federal judicial proceedings; and the second part of § 1985(3), which addresses federal elections.  *Id.*  As plaintiff complains of the actions of state officials in a state prosecution, the portions of § 1985 that address federal interests are inapplicable.

Thus, only two categories of proscribed conduct could theoretically apply here:  "[t]he second part of § 1985(2)[, which] applies to conspiracies to obstruct the course of justice in state courts, and the first part of § 1985(3)[, which] provides a cause of action against two or more persons who 'conspire or go in disguise on the highway or on the premises of another.'" *Id.* at

6

725 (quoting 42 U.S.C. § 1985).  Importantly, "[e]ach of these portions of the statute contains language requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws." *Id.*  As the Supreme Court has noted, "[t]he language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

This is where plaintiff's § 1985 claim fails.  The third amended complaint offers no facts to suggest that the alleged conspiracy deprived plaintiff of the equal protection of the laws, or that there was any racial component to plaintiff's prosecution.  Indeed, the third amended complaint's only reference to plaintiff's race is in the context of a PPD detective's alleged misidentification of the person being sought as a "white female" in the affidavit of probable cause.  *See* 3d Am. Compl. ¶ 20.  There is simply no suggestion that plaintiff's race played any role in his incarceration or prosecution, or that the DA Defendants acted out of racial animus. *See, e.g.*, *Jenks v. Port Auth. of Allegheny Cty.*, No. 06-1428, 2008 WL 3895942, at *11 (W.D. Pa. Aug. 20, 2008) ("Although Plaintiff directly asserts that he is African-American and Defendant [] is Caucasian, nowhere does Plaintiff even directly assert that Defendant [] discussed or agreed with anyone to treat Plaintiff differently because of his race.").  Accordingly, plaintiff's § 1985 claim is without merit and should be dismissed with prejudice.

7

        *ii.*       *Plaintiff's § 1985 claim must be dismissed because municipal actors cannot conspire among themselves.*

As demonstrated above, the third amended complaint fails to state a § 1985 conspiracy claim against the DA Defendants. But dismissal would be appropriate even if plaintiff's allegations *were* sufficient because the Third Circuit has made clear that municipal actors cannot conspire with each other.

Under the intracorporate conspiracy doctrine, "an entity cannot conspire with one who acts as its agent." *Schleig v. Borough of Nazareth*, No. 15-4550, 2016 WL 4208001, at *3 (E.D. Pa. Aug. 10, 2016); *see also Robison v. Canterbury Vill., Inc.*, 848 F.2d 424, 431 (3d Cir. 1988) ("[C]ourts that have had occasion to consider whether a section 1985(3) conspiracy may arise between a corporation and its officer have held that it cannot."). Courts have applied the doctrine to municipal defendants in Pennsylvania. *Schleig*, 2016 WL 4208001, at *3; *see also Jenks*, 2008 WL 3895942, at *10-11 (holding that § 1985 claim alleging conspiracy between Port Authority and its agents was barred by the intracorporate conspiracy doctrine). Accordingly, the doctrine bars plaintiff's § 1985 claim, which alleges a conspiracy between the City of Philadelphia, employees of the Philadelphia Police Department, and prosecutors from the Philadelphia District Attorney's Office.

All of the defendants in this action are municipal actors.[6] Under the intracorporate conspiracy doctrine, then, they cannot conspire with each other unless they "have acted for their

---

[6] There is some suggestion in the caselaw that district attorneys' offices are a state rather than municipal entity when they act in a prosecutorial capacity. *See, e.g.*, *Carter v. City of Phila.*, 181 F.3d 339, 353 (3d Cir. 1999) (noting that district attorney's offices have a "dual or hybrid status" in which they are state actors "[w]hen enforcing their sworn duties to enforce the law" and local

8

sole personal benefit and thus outside the course and scope of their employment." *Heffernan v. Hunter*, 189 F.3d 405, 412 (3d Cir. 1999). There are no allegations in the third amended complaint to suggest that any defendants acted outside the scope of their employment. Plaintiff's § 1985 claim against the DA Defendants must therefore be dismissed under the intracorporate conspiracy doctrine.

### B. The third amended complaint fails to allege a § 1983 claim against the DA Defendants.

As noted above, it is not entirely clear whether plaintiff includes the DA Defendants in his § 1983 allegations, which appear to target the City and the PPD. But regardless, plaintiff's conclusory allegations are insufficient to state a claim for relief. Thus, any putative § 1983 claim against the DA Defendants should be dismissed.

#### i. *Plaintiff's § 1983 claims should be dismissed for failure to allege an underlying constitutional violation by the DA Defendants.*

"A municipality is liable under Section 1983 where a plaintiff demonstrates that a municipality itself, through implementing a municipal policy or custom, causes a constitutional violation. Importantly, without an underlying constitutional violation, there can be no *Monell* claim." *Knellinger v. York St. Prop. Dev., LP*, 57 F. Supp. 3d 462, 471 (E.D. Pa. 2014) (citations

---

agencies when acting in an administrative capacity); *but see Wilson v. City of Phila.*, No. 04-05396, 2016 WL 1392250, at *15 (E.D. Pa. Apr. 8, 2016) (characterizing this statement in *Carter* as "dicta"). But Eleventh Amendment immunity would bar plaintiff's claims against the DA Defendants action if they were considered agents of the state. Thus, plaintiff faces a Catch-22: his action fails under the intracorporate conspiracy doctrine if the DA Defendants were the agents of the City, and it is barred by the Eleventh Amendment if the DA Defendants acted on behalf of the Commonwealth.

omitted); *see also Credico v. W. Goshen Police*, 574 F. App'x 126, 129 (3d Cir. 2014) ("Because [plaintiff] failed to state any claims against the officers, he cannot state claims against the West Chester Police Department for failure to train or deliberate indifference."). Plaintiff cannot state a claim for relief against the DA Defendants because the third amended complaint does not allege facts showing that the DA Defendants violated his constitutional rights, as is necessary for liability under *Monell* and § 1983.

*First*, to the extent that plaintiff bases his constitutional claims against the DA Defendants on a putatively false arrest and false imprisonment, those claims are time barred. The statute of limitations for a § 1983 claim is two years in Pennsylvania. *Ahmed v. Dragovich*, 297 F.3d 201, 206 (3d Cir. 2002). It is well settled that "[a] claim for false arrest, unlike a claim for malicious prosecution, covers damages only for the time of detention until the issuance of process or arraignment, and not more." *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998). Similarly, "[a] claim of false imprisonment accrues when a person is detained without legal process (the claims ends once that person is held pursuant to legal process, such as when a person is bound over by a magistrate or arraigned on charges)." *LeBlanc v. Snavely*, 453 F. App'x 140, 142 (3d Cir. 2011). The Third Circuit has therefore held that a § 1983 claim based on false arrest and false imprisonment accrues at the time of the arrest and imprisonment. *See id.* (dismissing false arrest and false imprisonment claims on statute of limitations grounds because claims had accrued on night of plaintiff's arrest); *see also Montgomery*, 159 F.3d at 126 n.5 ("[W]e read *Heck* [*v. Humphrey*, 512 U.S. 477 (1984)] to be consistent with our determination that [plaintiff's] false arrest and false imprisonment claims accrued on the night of her arrest.").

If the allegations of a complaint, taken as true, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim. *LeBlanc*, 453 F. App'x at 141. Here, the third amended complaint is clear that plaintiff was arrested on February 18, 2012. 3d. Am. Compl. ¶ 15. Plaintiff filed this action on January 12, 2016 – nearly four years after any false arrest or false imprisonment action accrued. *See* Mot. Proceed I.F.P., ECF No. 1. Because the third amended complaint is clear that any false arrest or false imprisonment claims accrued almost two years before this action was filed, they are time barred.

*Second*, the third amended complaint fails to state a claim for malicious prosecution against the DA Defendants. To state a claim for Fourth Amendment malicious prosecution under § 1983, plaintiff must allege facts showing that:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (*en banc*). Because the third amended complaint fails to allege facts establishing that the DA Defendants initiated the proceeding without probable cause, or that they acted maliciously or for a purpose other than bringing plaintiff to justice, both his *Monell* claims and his individual-capacity claim under § 1983 should be dismissed as to the DA Defendants.

"The Fourth Amendment forbids a state from detaining an individual unless the state actor reasonably believes that the individual has committed a crime—that is, the Fourth Amendment forbids a detention without probable cause." *Halsey v. Pfeiffer*, 750 F.3d 273, 291

11

(3d Cir. 2014). "Probable cause requires only that [the defendant] had concluded there was 'a probability or substantial chance' of the criminal activity in question." *Wheeler v. Wheeler*, 639 F. App'x 147, 150 (3d Cir. 2016) (quoting *United States v. Miknevich*, 638 F.3d 178, 185 (3d Cir. 2011)). Plaintiff's malicious prosecution claim against the DA Defendants fails, because the complaint does not allege facts showing that the former ADA Gore did not reasonably believe that there was "a probability or substantial chance," *id.*, that plaintiff had committed a crime.

The third amended complaint alleges only in the most conclusory fashion that the DA Defendants knew there was no probable cause to proceed with plaintiff's prosecution. The third amended complaint alleges that former ADA Gore had a "duty to investigate the facts of the matter brought to her attention for prosecution. Failing to do so, or deliberately in her administrative capacity used false of [sic] perjured testimony to detain a defendant for trial violates that person's rights, as in this case where Plaintiff had to sit in jail for three years." *Id.* ¶ 36. Plaintiff further alleges that former ADA Gore "known [sic] or should have known that there were falsities in the case, and should have moved to correct those falsities. . . . Yet knowing all of these [sic] early on, she deliberately allowed the Plaintiff to remain in jail while no further information or evidence was being gathered to prosecute the case." *Id.* ¶ 37.

The Third Circuit has made clear that only omissions of facts that are within a law-enforcement officer's knowledge can demonstrate a lack of probable cause: liability attaches only "if an officer withholds a fact ***in his ken*** that '[a]ny reasonable person would have known . . . was the kind of thing the judge would wish to know.'" *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993) (emphasis

12

and ellipsis added; alteration in original)). Thus, the complaint "must state *facts regarding the information known to the person who instituted the proceeding*, from which facts it could be concluded that the prosecution was instituted without probable cause." *Alfred v. New Jersey*, No. 13-0332, 2013 WL 4675536, at *6 (D.N.J. Aug. 29, 2013) (emphasis added). The complaint alleges no actual facts about what the DA Defendants knew when they charged plaintiff—it simply concludes that the DA Defendants knew or should have known that there was no evidence to support a finding of probable cause. Such boilerplate pleadings are insufficient to state a claim for violations of the Fourth Amendment.

Furthermore, plaintiff's malicious prosecution claim fails for the additional and independent reason that the complaint fails to allege any facts establishing malice by the DA Defendants. The complaint simply recites boilerplate allegations that the defendants' actions were "malicious, intentional, and/or reckless." 3d Am. Compl. ¶ 40. These allegations are remarkably similar to those at issue in *Iqbal*, which "reject[ed] bald assertions that petitioners 'knew of, condoned, and willfully and maliciously' agreed to subject plaintiff to harsh conditions of confinement." *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 680-81). Thus, the Third Circuit affirmed judgment as a matter of law for the defendants in a case in which the plaintiff offered "insufficient evidence of malice to support a malicious prosecution claim [and] support[ed] this contention only with [] vague assertions." *McKenna v. City of Phila.*, 582 F.3d 447, 461-62 (3d Cir. 2009). A New Jersey district court likewise dismissed the plaintiff's malicious prosecution claim for failure adequately to allege malice, observing that "[a]lthough Plaintiff has adequately alleged that she was seized, and that

13

the criminal proceeding terminated in her favor after she filed the original Complaint, she has failed to allege facts demonstrating that any state actor acted with malice in instituting the proceeding against her . . . ." *Alfred*, 2013 WL 4675536, at *6. And this court granted summary judgment for the Delaware County DA's Office on a malicious prosecution claim because the "[plaintiff] ha[d] produced no evidence that the District Attorney's office acted maliciously or for anything other than bringing [plaintiff] to justice." *Ginter v. Skahill*, No. 04-2444, 2006 WL 3043083, at *8-9 (E.D. Pa. Oct. 27, 2006), *aff'd*, 298 F. App'x 161 (3d Cir. 2008).[7]

The third amended complaint offers no facts from which the Court could infer malice by the DA Defendants. Instead, plaintiff simply alleges, in conclusory fashion, that the DA Defendants acted with malice. This is precisely the sort of conclusory allegation that *Iqbal* and *Twombly* rejected. The third amended complaint fails to allege facts showing any underlying constitutional violation by the DA Defendants, as is required for both *Monell* liability and individual liability. Accordingly, plaintiff's putative § 1983 claims against the DA Defendants should be dismissed.

      ii.    *The third amended complaint fails to allege a policy or custom by the District Attorney that would support a* Monell *claim.*

Even if plaintiff had sufficiently alleged an underlying constitutional violation, the third amended complaint still fails to state a claim for relief under *Monell*. Absent facts demonstrating an unconstitutional policy or custom by the District Attorney's Office, plaintiff should not be

---

[7] This is a pre-*Twombly* case, which likely explains how the plaintiff was able to proceed past the motion to dismiss stage.

permitted to open the doors to discovery merely by adding the labels "policy," "custom," and "deliberate indifference" to his complaint. This too is the sort of conclusory pleading that *Iqbal* and *Twombly* forbid.

As a preliminary matter, "under Pennsylvania law, only the District Attorney—and not Assistant District Attorneys—possesses policymaking authority for the District Attorney's Office." *Patterson v. City of Phila.*, No. 08-2140, 2009 WL 1259968, at *10 (E.D. Pa. May 1, 2009) (citations omitted). Although the third amended complaint grounds its claims in the actions of former ADA Gore, only the policies, acts, or omissions of the DA can form the basis for *Monell* liability against the Office. *See Patterson*, 2009 WL 1259968, at *10.

The third amended complaint offers only conclusory allegations that

> Plaintiff believes and avers herein that the Defendant City of Philadelphia has adopted and maintained for many years, a recognized and accepted policy, custom and practice of systematically failing to properly train, supervise and discipline . . . the lawyers from the district attorney's office who perform their duties in their investigatory capacities, regarding constitutional restraints on police power to falsely arrest and falsely imprison individuals without probable cause and/or legal justification.

3d Am. Compl. ¶ 31. Such allegations are not entitled to a presumption of truth under *Iqbal* and *Twombly*, as the Third Circuit held in identical circumstances in *LeBlanc*, 483 F. App'x at 666. The plaintiff in *LeBlanc* had brought claims for malicious prosecution (among other things) against the ADAs who charged him, and a piggybacking *Monell* claim against Lancaster County. *Id.* at 668-69. The Court of Appeals concluded that, as here, the ADAs were absolutely immune from liability.[8] *Id.* at 669. Regarding the *Monell* claim against the county, the court observed

---

[8] *See infra.*

that "LeBlanc baldly stated that Lancaster County had a policy of accepting criminal charges and prosecuting without verifying the truth to the charges. This was insufficient to state a claim against Lancaster County." *Id.* at 670.

So too here. The third amended complaint's allegations that the DA Defendants had a policy or custom of falsely arresting and maliciously prosecuting people are the same sort of conclusory allegations that the Third Circuit rejected in *LeBlanc*. Absent any facts to suggest that the DA Defendants had such a policy or custom, the *Monell* claims against the DA Defendants in their official capacity cannot survive a motion to dismiss.

### iii. Former ADA Gore is immune from liability for plaintiff's individual-capacity claims.

As this Court noted, *see* March 1, 2016 Order, "[t]he doctrine of absolute immunity shields prosecutors from liability related to their official acts." *Id.* (citing *Imbler v. Pachtman*, 424 U.S. 409, 417-20 (1976)). Indeed, it is well-settled that "[p]rosecutors sued for malicious prosecution under § 1983 enjoy absolute immunity for their conduct in initiating a prosecution and in presenting the State's case." *Clark v. Vernon*, 228 F. App'x 128, 131 (3d Cir. 2007) (citation and internal quotation marks omitted).[9]

---

[9] *See also Barnes v. City of Coatesville*, No. 93-1444, 1993 WL 259329, at *8 (E.D. Pa. June 28, 1993) (finding prosecutor absolutely immune from liability in § 1983 action based on failure to disclose exculpatory evidence), *aff'd*, 60 F.3d 813 (3d Cir. 1995); *Dennis v. Evans*, No. 09-0656, 2011 WL 900911, at *13 (M.D. Pa. Feb. 2, 2011) ("Because plaintiff complains of defendant [prosecutor's] inadequate investigation resulting in her decision to prosecute, the court finds that she is entitled to prosecutorial immunity."), *report and rec. adopted*, No. 09-0656, 2011 WL 901187 (M.D. Pa. Mar. 14, 2011); *accord Amrine v. Brooks*, No. 04-4300, 2007 WL 436087, at *6-7 (W.D. Mo. Feb. 6, 2007) (finding prosecutor absolutely immune from liability in § 1983 action based on failure to investigate potentially exculpatory evidence).

Even if absolute immunity did not apply here, former ADA Gore is shielded by qualified immunity. The Supreme Court has established a two-step analysis that governs whether an official is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, courts consider whether the facts alleged in the complaint show the violation of a constitutional right. If so, courts then determine whether the right at issue was clearly established at the time of the alleged misconduct. *Werkheiser v. Pocono Twp.*, 780 F.3d 172, 176 (3d Cir. 2015). The Court has discretion to analyze the two steps in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The DA Defendants have already demonstrated that the third amended complaint's conclusory allegations fail to state a claim against former ADA Gore for any constitutional violation. In the absence of any caselaw establishing that prosecutors can be held liable under the Fourth or Fifth Amendment for failure to discover exculpatory evidence quickly enough, it cannot fairly be said that plaintiff's constitutional right was "clearly established" in this instance. *Werkheiser*, 780 F.3d at 176. Former ADA Gore is therefore shielded by qualified immunity on plaintiffs' § 1983 claims.

For all of these reasons, the Court should dismiss plaintiff's § 1983 claims against former ADA Gore in her individual capacity.

## IV.  CONCLUSION

For the foregoing reasons, the claims against the DA Defendants should be dismissed.

And because further amendment would be futile, leave to amend should be denied.

                                    Respectfully submitted,

Date:   September 6, 2016           /s/ *Michael Scalera*
                                                Michael Scalera
                                                Assistant District Attorney

## Certificate of Service

    I certify that on this 6th day of September, 2016, I served the foregoing motion to dismiss and accompanying memorandum of law on all counsel of record via filing on ECF.

                                    */s/ Michael Scalera*
                                    Michael Scalera
                                    Assistant District Attorney

Case 2:16-cv-00148-ER   Document 22-1   Filed 09/06/16   Page 20 of 20