IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SYLVESTER EKWUNIFE,                 :    CIVIL ACTION
                                    :    NO. 16-0148
          Plaintiff,                :
                                    :
     v.                             :
                                    :
CITY OF PHILADELPHIA, et al.,       :
                                    :
          Defendants.               :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          March 24, 2017


     This action arises from the alleged arrest and
subsequent three-year detention of Plaintiff Sylvester Ekwunife
("Plaintiff") on sexual assault charges that were later
dismissed.  Plaintiff alleges that the affidavit of probable
cause submitted by the Philadelphia Police Department in support
of its application for his arrest warrant contained multiple
misstatements and omissions, resulting in his false arrest and
false imprisonment.  Plaintiff also alleges that after the sole
victim recanted her accusation against Plaintiff, the prosecutor
continued to pursue her case against Plaintiff and attempted to
use the recanted testimony to coerce a guilty plea from
Plaintiff, in violation of his constitutional rights.

Plaintiff brings claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985, as well as various state law claims, against the City of Philadelphia ("the City"); Detective Laura Hammond of the Philadelphia Police Department's Special Victims Unit ("Detective Hammond"), in her individual and official capacities; Philadelphia Police Officer Joseph T. Carter ("Officer Carter," and collectively with the City and Detective Hammond, "the City Defendants"), in his individual and official capacities; Philadelphia District Attorney R. Seth Williams ("DA Williams"), in his official capacity; and former Assistant District Attorney Heba Gore ("Former ADA Gore"), in her individual and official capacities (together with DA Williams, "the DA Defendants").

Following the June 24, 2016, dismissal without prejudice of Plaintiff's pro se Amended Complaint, Plaintiff filed a second and then a third amended complaint - this time represented by counsel - bringing claims of false arrest, false imprisonment, malicious prosecution, failure to train and supervise, and conspiracy.  On October 17, 2016, following a hearing, the Court granted the City Defendants' and DA Defendants' motions to dismiss the Third Amended Complaint, and granted Plaintiff leave to amend his complaint yet again, in accordance with the guidance the Court provided at the hearing. Plaintiff has now filed a Fourth Amended Complaint, and the City

and DA Defendants have each filed separate motions to dismiss.[1]
Plaintiff opposes the DA Defendants' motion, but has not filed a
response to the City Defendants' motion.  For the reasons that
follow, the Court will grant both motions to dismiss.

## I.   FACTUAL BACKGROUND

Plaintiff alleges the following facts, all of which
are presumed to be true for purposes of resolving the motions to
dismiss.

Plaintiff alleges he and his wife allowed Sharon
McFayden ("McFayden"), the mother of Plaintiff's wife's
granddaughter, to live with her children at a house Plaintiff
owned, with the understanding that McFayden would pay the
mortgage on the property.  See Fourth Am. Compl. ("FAC") ¶ 15,
ECF No. 32.  After McFayden failed to pay the mortgage,
Plaintiff asked her to move out of the home so that it could be
rented.  See id.  McFayden moved out of the home, but "started
plotting against Plaintiff."  Id.  She kept Plaintiff from
receiving notices from the bank regarding the mortgage, and
later arranged with the bank to forfeit the property.  Id.

_____

[1]      In their motion to dismiss, the City Defendants do not
include any arguments relating to Plaintiff's claims against
Detective Hammond and Officer Carter.  Accordingly, the Court
will not address the sufficiency of Plaintiff's claims against
those two defendants.

According to Plaintiff, McFayden has been diagnosed with bipolar disorder and schizophrenia.  Id.  As a result, Plaintiff's wife's son, Danny Rosario ("Rosario"), wanted custody of Karizma, the daughter of Rosario and McFayden.  Id. at ¶ 16.  Before the custody battle began, however, McFayden contacted Philadelphia's Department of Human Services ("DHS") and reported that Plaintiff had sexually abused Karizma.  Id. at ¶ 17.  DHS case workers then visited the home to investigate the complaint.  Id. at ¶ 18.  During the home visit, Plaintiff's wife and Rosario both informed the DHS case workers that Karizma "was known for fabricating things," and that her mother "was mentally ill, and had a motive to lie against [P]laintiff."  Id.  The case workers did not allow Plaintiff, or anyone else in the household, to tell them Plaintiff's side of the story.  Id. at ¶ 19.

On February 18, 2012, Plaintiff was arrested and detained on sexual assault charges.  Id. at ¶ 20.  Plaintiff alleges that the Philadelphia Police Department obtained a warrant to arrest him on the basis of an affidavit of probable cause prepared and filed by Detective Hammond.  Id. at ¶ 44. According to Plaintiff, Detective Hammond provided "false information" in her affidavit, including (1) incorrectly identifying Plaintiff as a white man; (2) listing the alleged victim as 11 years old, whereas she was between 3 and 4 years

4

old at the time of the incident; and (3) listing the incorrect address where the incident allegedly occurred.  See id.

Plaintiff alleges that at some point after his arrest, the Court of Common Pleas held a hearing at which "the Judge found that there was no 'digital penetration'" in the sexual assault case.  Id. at ¶ 21.  At some unspecified later point, Karizma "recanted her story" to the Assistant District Attorney prosecuting the case, Heba Gore.  Id.  Despite the victim's recantation, Plaintiff claims, the DA's Office "left [P]laintiff in custody while continuing to try to extort a guilty plea from him with a real threat of a 50-year sentence."  Id. at ¶ 22.  In January 2015, nearly three years after Plaintiff was arrested, the DA's Office requested a dismissal of the case against him without explanation.  Id. at ¶ 23.  On May 1, 2015, the state court expunged Plaintiff's arrest record.  Id. at ¶ 24.

Plaintiff alleges that as a result of Defendants' actions, he was humiliated and beaten by "other inmates who perceived him to be a child molester, and had to be taken to the hospital multiple times."  Id. at ¶ 60.  Plaintiff also alleges that he was "publicly shamed, ridiculed, [and] humiliated," and he lost the opportunity to care for his special-needs son.  Id. at ¶¶ 59, 61.

## II.   PROCEDURAL HISTORY

Plaintiff filed an initial <u>pro se</u> complaint on January 21, 2016, asserting claims against the City and the Philadelphia District Attorney's Office.  ECF No. 3.  The Court dismissed Plaintiff's claims against the Philadelphia District Attorney's Office pursuant to 28 U.S.C. § 1915(e), explaining that (1) a district attorney's office is not an "entity" for purposes of 42 U.S.C. § 1983 and therefore is not susceptible to suit, and (2) the doctrine of absolute immunity shields prosecutors from liability related to their official acts.  ECF No. 2.

Plaintiff subsequently amended his complaint on February 10, 2016.  ECF No. 4.  Plaintiff's Amended Complaint brought only one claim, violation of Plaintiff's Fourteenth Amendment Due Process rights, and named only three defendants: the City of Philadelphia, Former ADA Gore, individually and as an official, and Detective Hammond, individually and as an official.  <u>See</u> <u>id.</u>  On March 1, 2016, the Court issued an order dismissing Plaintiff's claims against Former ADA Gore pursuant to 28 U.S.C. § 1915(e) under the doctrine of absolute immunity. ECF No. 5.

On May 11, 2016, the City filed a motion to dismiss Plaintiff's Amended Complaint.  ECF No. 9.  The City argued that Plaintiff failed to state a claim for municipal liability under § 1983 and <u>Monell v. Department of Social Services</u>, 436 U.S. 658

(1978), because Plaintiff (1) failed to identify a municipal policymaker, (2) failed to allege facts regarding a municipal policy or custom that deprived Plaintiff of his constitutional rights, and (3) failed to identify specific instances of prior police misconduct caused by the City's policies or practices. See id. Plaintiff did not respond to the motion.

On June 7, 2016, Plaintiff retained counsel. See ECF No. 12. On June 24, 2016, the Court held a hearing on Defendants' motion to dismiss the Amended Complaint. See ECF No. 15. At the hearing, the Court stated that Plaintiff's allegations regarding a policy, practice, or procedure relating to the alleged failure to train were conclusory, and granted Defendants' motion to dismiss without prejudice, allowing Plaintiff leave to amend his complaint. See Hr'g Tr. at 15, Jun. 24, 2016, ECF No. 29. During a discussion regarding Plaintiff's failure to properly allege a policymaker, the Court noted that absolute immunity does not apply to the District Attorney's Office to the extent the office is acting in an administrative capacity instead of a prosecutorial capacity. See id. at 8-9. The Court suggested that Plaintiff add the District Attorney's Office as a defendant if Plaintiff intended to allege that the District Attorney's Office is the policymaker for purposes of his § 1983 claim and that the office was acting in an administrative capacity. See id. at 13-15.

7

Plaintiff filed a Second Amended Complaint on July 18, 2016, ECF No. 18, followed by a Third Amended Complaint on July 19, 2016, ECF No. 19.  The Third Amended Complaint added Officer Carter and DA Williams as defendants, and re-added Former ADA Gore.  ECF No. 19.  The DA Defendants and City Defendants each filed separate motions to dismiss, ECF Nos. 22, 25, which Plaintiff opposed, ECF Nos. 27, 28.  On October 17, 2016, following a hearing, the Court granted both motions to dismiss, dismissing the claims against the City and the DA Defendants in Plaintiff's Third Amended Complaint without prejudice and with leave to amend.  At the hearing, the Court asked Plaintiff to make the following changes in the Fourth Amended Complaint: (1) identify each of the defendants and the claims Plaintiff is making against each defendant; (2) identify the facts supporting each claim against each defendant, including sufficient facts to make the claim plausible under Twombly and Iqbal, and (3) to the extent Plaintiff intended to bring a Monell claim, identify the specific policy or custom at issue.  See Hr'g Tr. 36:5-37:10, Oct. 14, 2016, ECF No. 37.

On November 3, 2016, Plaintiff filed a Fourth Amended Complaint, bringing claims for violation of due process and failure to train (Counts I and II), malicious prosecution (Count III), false arrest and false imprisonment (Count IV), failure to intervene (Count V), failure to investigate (Count VI),

8

conspiracy (Count VII), intentional infliction of emotional distress (Count VIII), and false arrest and false imprisonment (Count IX).  ECF No. 32.  Plaintiff seeks compensatory and punitive damages in the amount of $15 million.  Id. at ¶ 62.

On December 2, 2016, the DA Defendants moved to dismiss Plaintiff's Fourth Amended Complaint.  ECF No. 34.  On December 6, 2016, the City Defendants moved to dismiss all claims against the City.  ECF No. 35.  On December 15, 2016, Plaintiff filed a "Memorandum of Law in Support of Plaintiff's Response to Motion to Dismiss the Fourth Amended Complaint Sub Judice [sic]," which appears to oppose only the DA Defendants' motion to dismiss.  ECF No. 36.  Plaintiff's time to respond to the City Defendants' motion to dismiss has expired.  The Court is now ready to rule on both motions.

## III. LEGAL STANDARD

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (quoting Rocks v. City of Phila., 868 F.2d 644, 645 (3d

Cir. 1989)).  To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id.  Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d

Cir. 1994); <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).

## IV.  DISCUSSION

In Plaintiff's Fourth Amended Complaint, he brings claims under 42 U.S.C. § 1983 for violation of due process, failure to train, false arrest, false imprisonment, and failure to intervene; a conspiracy claim under 42 U.S.C. § 1985; and state law claims for intentional infliction of emotional distress, false arrest, and false imprisonment.  Plaintiff also brings malicious prosecution and failure-to-intervene claims, without specifying whether he is bringing those claims under state or federal law.

The City Defendants argue that Plaintiff has failed to state a claim with respect to any of his § 1983 claims against the City, because (1) he has not adequately pleaded that his constitutional rights were violated by a municipal policy or custom, as required to state a § 1983 claim against a municipality under <u>Monell</u>, and (2) he has failed to plead a failure-to-train claim because he has not identified any instances of prior police misconduct.  Plaintiff has not responded to the City Defendants' motion.  As Plaintiff's time to oppose the City Defendants' motion has expired, the Court will grant the motion as unopposed.  <u>See</u> Local R. 7.1(c)

(providing that "[i]n the absence of timely response, [a] motion may be granted as uncontested except as provided under Fed. R. Civ. P. 56."). However, in the interest of completeness, the Court will address the City Defendant's arguments below.

The DA Defendants argue that (1) Plaintiff's § 1983 claims against the DA Defendants in their official capacities fail because Plaintiff has not adequately pleaded an unconstitutional policy or custom that violated Plaintiff's rights or a failure-to-train claim; (2) a failure-to-intervene claim does not apply to the facts Plaintiff alleges; (3) Plaintiff has failed to state a claim against the DA Defendants under any subsection of § 1985; (4) Plaintiff's state law claims against the DA Defendants in their official capacities are barred by the Pennsylvania Tort Claims Act; (5) Plaintiff's claim under the Pennsylvania Constitution fails because there is no private right of action; and (6) Plaintiff's claims against Former ADA Gore in her individual capacity fail under the doctrine of absolute immunity.

For the reasons discussed below, the Court concludes that Plaintiff fails to establish a § 1985 claim against the DA Defendants, and that Plaintiff's § 1983 claims against the City and against the DA Defendants in their official capacities fail because Plaintiff's conclusory allegations do not establish a municipal policy or custom that would support a Monell claim.

12

Further, the Court agrees with the DA Defendants that
Plaintiff's due process and malicious prosecution claims against
Former ADA Gore in her individual capacity are barred by the
doctrine of absolute immunity, that a failure-to-intervene claim
does not apply here, and that there is no private right of
action under the Pennsylvania Constitution.  To the extent that
Plaintiff brings any state law claims against the DA Defendants
in their official capacities or against the City, those claims
are barred by the Pennsylvania Tort Claims Act.  The Court will
therefore dismiss all claims against the City and the DA
Defendants.

    A.   <u>Section 1983 Claims</u>

    Section 1983 provides a civil remedy for the
"deprivation of any rights, privileges, or immunities secured by
the Constitution and laws."  42 U.S.C. § 1983.  "Section 1983
does not by itself confer substantive rights, but instead
provides a remedy for redress when a constitutionally protected
right has been violated."  <u>Goff v. Kutztown Univ.</u>, 63 F. Supp.
3d 475, 480 (E.D. Pa. 2014) (citing <u>Oklahoma City v. Tuttle</u>, 471
U.S. 808, 816 (1985)).

    Plaintiff brings claims under § 1983 against (1)
Detective Hammond, Officer Carter, and Former ADA Gore in their
individual capacities, (2) the DA Defendants in their official

capacities, and (3) the City.  Defendants do not challenge
Plaintiff's claims against Detective Hammond and Officer Carter,
and therefore the Court will limit its analysis to Plaintiff's
claims against Former ADA Gore in her individual capacity and
against the City and the DA Defendants in their official
capacities.

   1. <u>Former ADA Gore</u>

   Although Plaintiff's Fourth Amended Complaint does not
clearly specify which claims he intends to bring against each
defendant, Plaintiff appears to bring claims against Former ADA
Gore in her individual capacity under § 1983 for violation of
due process (Counts I and II), malicious prosecution (Count
III), and failure-to-intervene (Count V).  The DA Defendants
argue that (1) Plaintiff's due process claims fail because the
Fourteenth Amendment does not provide relief for injuries
arising out of pretrial detention; (2) Plaintiff's malicious
prosecution claim fails because he does not plead facts
establishing that Former ADA Gore initiated the prosecution of
Plaintiff without probable cause or that she acted maliciously;
(3) a failure-to-intervene claim does not apply under these
facts; and (4) all of Plaintiff's claims against Former ADA Gore
in her individual capacity are barred by the doctrine of
absolute prosecutorial immunity.

The Court agrees that Plaintiff's due process and malicious prosecution claims against Former ADA Gore in her individual capacity are barred by the doctrine of absolute immunity, and therefore the Court will not reach the remainder of the DA Defendants' arguments with respect to those claims. The DA Defendants are also correct that there is no recognized duty to intervene under the facts Plaintiff alleges.

> a.   Absolute Immunity for Due Process and Malicious Prosecution Claims

The doctrine of absolute immunity shields prosecutors from liability related to their official acts.  See Imbler v. Pachtman, 424 U.S. 409, 417-20 (1976).  Under this doctrine, a prosecutor is absolutely immune from liability for money damages under § 1983 for acts "within the scope of his duties in initiating and pursuing a criminal prosecution."  Id. at 410. While this immunity "extends to acts that are 'intimately associated with the judicial phase of the criminal process,'" Yarris v. Cnty. of Del., 465 F.3d 129, 135 (3d Cir. 2006) (quoting Imbler, 424 U.S. at 430-31), it does not include "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings," Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).  "Ultimately, whether a prosecutor is entitled to absolute immunity depends on

whether she establishes that she was functioning as the state's 'advocate' while engaging in the alleged conduct that gives rise to the constitutional violation." Yarris, 465 F.3d at 136 (citing Buckley, 509 U.S. at 274).

The Third Circuit has explained that "a person is not immune from suit for every wrong he commits just because he happens to be employed as a prosecutor: the 'inquiry focuses on the nature of the function performed, not the identity of the actor who performed it.'" Schneyder v. Smith, 653 F.3d 313, 332 (3d Cir. 2011) (quoting Odd v. Malone, 538 F.3d 202, 208 (3d Cir. 2008)).  A court's analysis of absolute immunity has two steps: first, "[t]he court must ascertain just what conduct forms the basis for the plaintiff's cause of action," and second, "it must then determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served." Id.  The first step "focuses on the unique facts of each case and requires careful dissection of the prosecutor's actions." Id. (quoting Odd, 538 F.3d at 210).

Here, with respect to his due process and malicious prosecution claims, Plaintiff alleges that Former ADA Gore (1) continued to pursue the case against Plaintiff after the sole alleged victim recanted her testimony, (2) attempted to use the "fabricated evidence" to coerce a guilty plea from Plaintiff, and (3) failed to disclose the recantation to

Plaintiff's defense counsel.  See FAC ¶¶ 25, 28, 32, 41.  The DA
Defendants argue that absolute immunity bars these claims.  See
DA Mem. at 24-25.

In response, Plaintiff argues that (1) Former ADA Gore
was acting in an administrative, rather than prosecutorial,
capacity when she "coached" the victim "to present the
fabricated and later recanted evidence"; and (2) absolute
immunity does not apply where a plaintiff alleges that a
prosecutor fabricated evidence.  See Pl.'s Mem. at 3-4.  In
support, Plaintiff cites Buckley, 509 U.S. at 275, which held
that a prosecutor does not benefit from absolute immunity before
the prosecutor has probable cause to have a person arrested, or
for "investigative functions normally performed by a detective
or police officer."  Buckley, 509 U.S. at 273.  In Buckley, the
Supreme Court found that a prosecutor's alleged fabrication of
false evidence during the preliminary investigation of an
unsolved crime was protected only by qualified immunity, not
absolute immunity.  See id. at 275.

Plaintiff's response seems to argue that Former ADA
Gore was involved in creating the evidence used in Plaintiff's
prosecution, by "coaching" the victim and "fabricating" the
evidence.  See Pl.'s Mem. at 4.  If Former ADA Gore fabricated
evidence during the investigation of the crime, before probable
cause existed and before a judge issued a warrant for

Plaintiff's arrest, that act might not be subject to absolute immunity under Buckley. However, those allegations do not actually appear in Plaintiff's Fourth Amended Complaint, which alleges only that Former ADA Gore attempted to use the victim's statements in her prosecution after the victim had recanted and failed to disclose the recantation - not that Former ADA Gore "coached" or "fabricated" the victim's accusation in the first place. Importantly, Plaintiff does not allege that Former ADA Gore had any involvement in the pre-arrest, investigatory phase of the case, prior to the initial hearing in the Court of Common Pleas. Instead, Plaintiff alleges that after a hearing, the victim recanted and Former ADA Gore continued to use the recanted statement. See FAC ¶¶ 21-22. The Court cannot consider "allegations" first presented in Plaintiff's opposition to the motion to dismiss that do not appear in the complaint or its attachments, matters of public record, or indisputably authentic documents. See Jordan, 20 F.3d at 1261.

Based on the facts Plaintiff actually alleges, Former ADA Gore is absolutely immune from liability for Plaintiff's due process and malicious prosecution claims against her in her individual capacity. "[A] prosecutor is absolutely immune from liability for using 'false testimony in connection with [a] prosecution.'" Yarris, 465 F.3d at 139 (quoting Kulwicki v. Dawson, 969 F.2d 1454, 1465 (3d Cir. 1992)). In addition,

18

prosecutors are absolutely immune for "the solicitation of false statements . . . to the extent that their conduct occurred while they were acting as advocates rather than investigators." Id. As Plaintiff has alleged that Former ADA Gore attempted to use the recanted testimony after charges were filed against Plaintiff – i.e., while Former ADA Gore was acting as the state's advocate - she is entitled to absolute immunity for that aspect of Plaintiff's claim.[2]

Former ADA Gore is also entitled to absolute immunity for her alleged failure to disclose the recantation, as "[i]t is well settled that prosecutors are entitled to absolute immunity from claims based on their failure to disclose exculpatory evidence, so long as they did so while functioning in their prosecutorial capacity." Yarris, 465 F.3d at 137.  There are exceptions, such as where a prosecutor knowingly destroyed exculpatory evidence, in addition to merely withholding it.  See id. at 136 (citing Henderson v. Fisher, 631 F.3d 1115, 1120 (3d Cir. 1980) (per curiam)).  As the Third Circuit explained,

---

[2]     Further, in contrast to Kulwicki, it is not clear based on Plaintiff's allegations that Former ADA Gore had any reason to know that the victim's testimony was "false" merely because the victim later recanted it.  As the DA Defendants point out, a sexual assault victim's recantation of her accusation of assault does not conclusively establish that the assault did not take place, as the victim may have recanted her statement as a result of outside pressures.  See DA Mem. at 4. This is particularly true where, as here, the victim was a child, and the accused was a family member.

"[u]nlike decisions on whether to withhold evidence from the defense, decisions to destroy evidence are not related to a prosecutor's prosecutorial function" and absolute immunity therefore does not apply.  Id.  Here, however, there is no allegation that Former ADA Gore destroyed evidence, only that she failed to timely disclose the recantation to defense counsel.

As Plaintiff's due process and malicious prosecution claims against Former ADA Gore in her individual capacity solely allege unconstitutional conduct related to her role as the state's advocate after Plaintiff had been criminally charged, Former ADA Gore is absolutely immune from liability with respect to those claims.  Accordingly, the Court will dismiss Counts I, II, and III against Former ADA Gore in her individual capacity.

b.  Failure to Intervene

Plaintiff asserts a "failure to intervene" claim in Count V, alleging that Former ADA Gore, among other Defendants, "failed to intervene to correct the false information that was used in this case to arrest and detain an innocent man in the person of this plaintiff."  FAC ¶ 49.  Plaintiff does not state any basis for his claim under either federal or state law.

The DA Defendants argue that "failure to intervene" claims are almost exclusively brought against state actors who

fail to intervene in cases of alleged brutality by police or corrections officers, and that they are not aware of any cases in this Circuit holding a prosecutor liable on the theory advanced by Plaintiff.  See DA Mem. at 18 (citing Third Circuit Model Jury Instructions (Civil) § 4.6.2 (2015) ("A defendant can in appropriate circumstances be held liable for failing to intervene to stop a beating.")).

In response, Plaintiff argues that "[i]t is quite axiomatic that if a court can find prosecutor's failure to intervene in a police beating, it may well also find for failure to intervene in the fabrication of evidence that would be used to charge and prosecute an innocent man."  Pl.'s Mem. at 4.  In support, Plaintiff cites Pardue v. City of Saraland, in which the Southern District of Alabama held that state-agent immunity barred a plaintiff's Alabama state law claim against a prosecutor for failing to intervene in the allegedly unconstitutional interrogation of the plaintiff.  See Pl.'s Mem. at 4 (discussing Pardue, No. 99-0799, 2011 WL 130332, at *8-9 (S.D. Ala. Jan. 14, 2011)).  That case simply does not establish that a failure-to-intervene claim exists under federal or Pennsylvania state law in the circumstances Plaintiff alleges here: where a prosecutor allegedly failed to intervene to

correct false information in an affidavit of probable cause submitted by a police officer.[3]

Even if a prosecutor's alleged failure to intervene to correct false information used in an affidavit of probable cause were a cognizable failure-to-intervene claim, Plaintiff would still need to allege that Former ADA Gore had a "realistic and reasonable opportunity" to intervene, or at the very least, was aware of the constitutional violation.  See Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002) (an officer who "fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence" is liable under § 1983 if he had a "realistic and reasonable opportunity to intervene").  Plaintiff has not alleged that Former ADA Gore was even aware of the allegedly false information in Detective Hammond's affidavit of probable cause supporting the arrest warrant, let alone that Former ADA Gore had a reasonable opportunity to correct it.

_____

[3]         Indeed, Pardue is inapposite for numerous reasons: the court concluded only that the failure-to-intervene claim was barred, and did not make any determination regarding the existence of such a claim; the court analyzed the claim under Alabama state law, which is inapplicable here; and the facts, which involved an allegedly unlawful interrogation at which the prosecutor was present, are not analogous to those here, where Plaintiff has alleged that a prosecutor failed to intervene to correct false information in an affidavit of probable cause submitted by a police officer.  See 2011 WL 130332, at *8-9. Finally, the decision is not the law in this Circuit and is not binding on this Court.

As there is no legal basis for Plaintiff's failure-to-intervene claim, the Court will dismiss Count V against Former ADA Gore in her individual capacity.

### 2.   The City and DA Defendants

The Supreme Court has held that "a municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  Instead, municipalities are liable under § 1983 only when "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." Id.  Liability arises where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. at 690.  In accordance with Monell, "[p]olicy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (second alteration in original) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)).

In the absence of an official policy, a municipality may also face liability under § 1983 "for constitutional

23

deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."  <u>Monell</u>, 436 U.S. at 690-91.  A "custom" arises from practices by state officials that amount to entrenched behavior in the municipal employees. <u>Id.</u> at 691.

To state a claim under <u>Monell</u>, a plaintiff must establish that (1) the municipality had a policy or custom that deprived the plaintiff of his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) the plaintiff's injuries were caused by the identified policy or custom.  <u>See id.</u> at 692-94.  In order to establish a municipal policy or custom, a plaintiff must show that "through its <u>deliberate</u> conduct, the municipality was the 'moving force' behind the injury alleged."  <u>Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown</u>, 520 U.S. 397, 403 (1997).

A municipality may also be liable under § 1983 for a failure to train its employees, if the failure to train "amount[s] to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011) (quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989)).  "Only then 'can such a shortcoming be properly thought of as a city "policy or

custom" that is actionable under § 1983.'"  Id. (quoting Canton,
489 U.S. at 389).

The DA Defendants argue that Plaintiff fails to state
a § 1983 claim against them under Monell, including under a
failure-to-train theory of liability, because Plaintiff
(1) fails to allege an underlying constitutional violation by
the DA Defendants, and (2) fails to adequately plead an
unconstitutional policy or custom instituted by the District
Attorney.  See DA Mem. at 9-13.  The City likewise argues that
Plaintiff fails to properly allege any municipal policy or
custom that caused a constitutional violation against him, and
fails to allege prior police misconduct, as required for a
failure-to-train claim.  See City Mem. at 5-7.

a.   Policy or Custom

With respect to the DA Defendants, Plaintiff alleges
that DA Williams (1) "either created or condoned a policy of
[sic] custom where it signaled to his subordinates that it [sic]
okay to use fabricated evidence to initiate a criminal
prosecution, and to withhold such evidence from the criminal
defense," FAC ¶ 25, and (2) "encouraged or condoned a policy, or
custom or practice of using known false or fabricated evidence,"
id. at ¶ 40.  Plaintiff does not plead any facts relating to
these alleged policies or customs.  Plaintiff's allegations of a

policy or custom on the part of the City are equally vague; Plaintiff alleges only that Former Commissioner Ramsey failed "to properly implement rules on proper investigation." Id. at ¶ 51. Paradoxically, Plaintiff also alleges that the Philadelphia Police Department's policies regarding the investigations of rape cases were not followed, ostensibly admitting that the City did, in fact, have policies regarding the investigation of rape cases. See id.

These conclusory allegations, which merely parrot the standard of liability, are insufficient to state a claim for § 1983 liability under Monell. See Groman v. Twp. of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995) (holding that "vague assertions" of a policy or custom, without more, are not sufficient to state a claim under Monell). In order to adequately plead a Monell claim, Plaintiff must first "identify a custom or policy" of the City and/or D.A.'s Office and "specify what exactly that custom or policy was," McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009), and then plead facts demonstrating a "direct causal link between [the City and/or D.A. Office's] policy or custom and the alleged constitutional deprivation," Jiminez v. All American Rathskeller, Inc., 503 F. 3d 247, 249 (3d Cir. 2007). Plaintiff's allegations regarding the policies or customs of DA Williams and the City fall woefully short of this standard.

26

b.   Failure to Train

Plaintiff also brings a failure-to-train claim, alleging that (1) DA Williams failed to train prosecutors "in the matter of fabricating evidence, and withholding the fabricated evidence," FAC ¶ 29; (2) the City failed to properly supervise officers to ensure that "every case is properly investigated to flesh out fabricated cases such as this one," id. at ¶ 51.

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick, 563 U.S. at 62 (quoting Bryan Cnty., 520 U.S. at 409). The purpose of the pattern requirement is to show that policymakers exhibited a "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action - the 'deliberate indifference' - necessary to trigger municipal liability."  Id. (quoting Bryan Cnty., 520 U.S. at 407).  "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Id.

In absence of a pattern, deliberate indifference for purposes of a failure-to-train claim may be established by a single incident in the "rare" circumstance "that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." Id. at 63. For a single incident to establish deliberate indifference, a plaintiff must allege that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Carter v. City of Phila., 181 F.3d 339, 357 (1999).

Here, Plaintiff has not provided any allegations of a pattern of similar constitutional violations by untrained employees. Instead, Plaintiff merely argues that his failure-to-train allegations are sufficient to state a claim because "it is obvious that ADA Heba Gore was not properly trained." Pl.'s Mem. at 3. Contrary to Plaintiff's assertions, none of the allegations in Plaintiff's Fourth Amended Complaint constitute the "rare" circumstance necessary to create failure-to-train liability in absence of a pre-existing pattern.

With respect to DA Williams, Plaintiff alleges that he failed to train prosecutors regarding the use of recanted

28

evidence and the failure to disclose the recantation of a victim's testimony.  The DA Defendants argue that single-incident liability for these allegations is foreclosed by Connick, in which the Supreme Court held that "[a] district attorney is entitled to rely on prosecutors' professional training and ethical obligations in the absence of specific reason, such as a pattern of violations, to believe that those tools are insufficient to prevent future constitutional violations in 'the usual and recurring situations with which [the prosecutors] must deal.'" Connick, 563 U.S. at 67 (quoting Canton, 489 U.S. at 391).  The Supreme Court explained that, unlike police officers, prosecutors have received extensive legal training both during and after law school, have passed the bar exam, must satisfy character and fitness requirements, and are subject to an ethical regime to reinforce the profession's standards.  See id. at 64-66.  As a result, "recurring constitutional violations are not the 'obvious consequence' of failing to provide prosecutors with formal in-house training about how to obey the law."  Id. at 66 (quoting Bryan Cnty., 520 U.S. at 409).  Accordingly, the court found the plaintiff's allegation that a prosecutor failed to disclose exculpatory evidence – the same allegation Plaintiff makes here – insufficient to establish a single-incident failure-to-train claim.  See id. at 63-68.  The DA Defendants argue that Connick

29

therefore bars Plaintiff's single-incident failure-to-train claim here.  See DA Mem. at 13.

In response to the DA Defendants' arguments, Plaintiff states only that "fabricating evidence and using recanted evidence against a criminal defendant" is not "Brady-type prosecutorial misconduct," and therefore Connick does not apply. Pl.'s Mem. at 3.  But as discussed above, supra at 18, Plaintiff's Fourth Amended Complaint does not allege that Former ADA Gore "fabricated" evidence, only that she continued to use a victim's recanted testimony after it was recanted, and that she failed to disclose the recantation.  Of these, only the use of the recanted testimony is not a Brady-related allegation, and the Court is persuaded by the DA Defendants' argument that the Supreme Court's reasoning in Connick applies to that allegation as well: the decision of whether or not to use recanted testimony is one of "'the usual and recurring situations with which [the prosecutors] must deal,'" and therefore DA Williams was entitled to rely on the legal training and ethical obligations of his prosecutors in that absence of a pattern of violations, which Plaintiff does not allege.  Accordingly, the Court will dismiss Plaintiff's failure-to-train claim against DA Williams in his official capacity.

Plaintiff's allegation regarding the City's alleged failure to train police officers in investigatory techniques

fares no better.  The City Defendants argue that Plaintiffs'
conclusory language that the City failed to "supervise" its
officers to ensure cases are "properly investigated" is far too
vague to establish a failure-to-train claim.  See City Mem. at
6-7 (citing Niblack v. Murray, No. 12-6910, 2013 WL 4432081, at
*2, 6 (D.N.J. Aug. 14, 2013) (dismissing similar allegations);
Williams v. Borough of Sharon Hill, No. 12-5395, 2013 WL 4743471
(E.D. Pa. Sept. 4, 2013) (same)).  The Court agrees.  Plaintiff
has failed to allege how the City's training programs were
deficient, or even what or whose misconduct the alleged training
failure caused.  Plaintiff's bare allegations are not sufficient
to state a claim.

     As Plaintiff has failed to plead a municipal policy or
custom establishing a § 1983 claim against the DA Defendants or
the City under Monell, the Court will dismiss all of Plaintiff's
§ 1983 claims against the City and the DA Defendants in their
official capacities.

     B.   Section 1985 Conspiracy Claim (Count VII)

     In Count VII, Plaintiff brings a conspiracy claim
against ADA Gore, Detective Hammond, and Officer Carter under 42
U.S.C. § 1985, alleging that they "conspired with the agents of
the Department of Human Services to bring false arrest and false

31

imprisonment and malicious prosecution against [P]laintiff."[4]
FAC ¶¶ 52-53.  The DA Defendants argue that (1) Plaintiff has
failed to state a claim under any subsection of § 1985, and
(2) Plaintiff's claim fails because state and municipal
officials cannot conspire with each other if they are acting
within the scope of their duties.  See DA Mem. at 18-22.  In
response, Plaintiff's sole argument is that the Fourth Amended
Complaint does not allege a conspiracy among state actors, but
instead, a conspiracy between state actors and ordinary
citizens.  See Pl.'s Mem. at 5.  Plaintiff asserts, without
citing any case law, that such a claim is cognizable under
§ 1985.  See id.

Section 1985 creates a private civil action for
certain persons injured by certain types of conspiracies to
interfere with civil rights.  See 42 U.S.C. § 1985.  Two
categories of conspiracies prohibited under § 1985 apply to
state conduct, and therefore are potentially applicable here:
(1) a conspiracy "for the purpose of impeding, hindering,
obstructing, or defeating, in any manner, the due course of

---

[4]      Plaintiff also includes "Conspiracy, 42 U.S.C. Section
1985" in the heading of Count VIII, which he brings against
Detective Hammond, Officer Carter, Former ADA Gore, DA Williams,
and Former Commissioner Ramsey, but none of the allegations in
that count relate to conspiracy.  The remainder of the heading,
and all of the allegations within Count VIII, relate to
Plaintiff's claim for intentional infliction of emotional
distress.

justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws," 42 U.S.C. § 1985(2), and (2) a conspiracy to "go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws," 42 U.S.C. § 1985(3).

As the Supreme Court has observed, "[e]each of these portions of the statute contains language requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws." Kush v. Rutledge, 460 U.S. 719, 725 (1983). This "means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). Thus, to state a claim under either of the equal protection provisions of § 1985, a plaintiff must allege:

> (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons [of] the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997) (citing Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971)); United Bhd. of

Carpenters & Joiners of Am., Local 610 v. Scott, 463 U.S. 825, 828-29 (1983)).

Plaintiff does not allege that the alleged conspiracy among Former ADA Gore, Detective Hammond, Officer Carter, and the Department of Human Services was motivated by any discriminatory animus.  Indeed, the Fourth Amended Complaint does not mention any class that is protected under the Equal Protection Clause of the Fourteenth Amendment at all, except to allege that the affidavit of probable cause incorrectly identified Plaintiff as white (suggesting that he is not).

Plaintiff's passing mention of his race, without any allegation that any of the Defendants were motivated by racial bias, is plainly insufficient to plead discriminatory animus under § 1985.  See, e.g., Pasqua v. Cnty. of Hunterdon, Nos. 14-4203, 15-3501, 2016 WL 4253958, at *22 (D.N.J. Aug. 11, 2016) (holding that plaintiffs "have fallen woefully short" of stating a claim under § 1985 where plaintiffs "have not alleged the most basic element of a 1985 conspiracy claim – that the defendants were 'motivated by a racial or class based discriminatory animus'") (quoting Lake, 112 F.3d at 685); Williams v. Walters, No. 14-2140, 2014 WL 3557203, at *4 n.6 (E.D. Pa. July 17, 2014) (granting motion to dismiss § 1985 claim where plaintiff failed to allege, inter alia, "that the alleged conspirators acted with any discriminatory animus").

34

Accordingly, Plaintiff fails to state a claim for relief under § 1985.

C.    State Law Claims (Counts VIII and IX)

Finally, Plaintiff brings state law claims for intentional infliction of emotional distress (Count VIII) and false arrest and false imprisonment in violation of the Pennsylvania Constitution (Count IX).  Although it is unclear, Plaintiff may also intend to bring his malicious prosecution and failure-to-intervene claims under state law.  The DA Defendants argue that (1) they are immune from liability for Plaintiff's state tort claims under the Pennsylvania Tort Claims Act; and (2) Plaintiff's claim under the Pennsylvania Constitution fails because there is no private right of action.  See DA Mem. at 22-24.

The Pennsylvania Tort Claims Act provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  42 Pa. Cons. Stat. Ann. § 8541.  The Act includes an exception to immunity for individual employees if "it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct."  42 Pa. Cons. Stat. Ann. § 8550.

"[W]illful misconduct means that the actor desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue," such that the actor's intent can be implied.  Evans v. Phila. Transp. Co., 212 A.2d 440, 443 (Pa. 1965).  Here, there are no allegations of malice or willful misconduct in the Fourth Amended Complaint. As a result, Plaintiff's state tort law claim for intentional infliction of emotional distress is barred.  Also, to the extent that Plaintiff intends to bring malicious prosecution or failure-to-intervene claims under Pennsylvania state tort law, those claims are barred as well.

With respect to Plaintiff's claim for a violation of the Pennsylvania Constitution, as the DA Defendants correctly note, the Third Circuit has stated that "[t]he prevailing view is that Pennsylvania does not recognize a private right of action for damages in a suit alleging violation of the Pennsylvania Constitution."  DA Mem. at 23 (quoting Gary v. Braddock Cemetery, 517 F.3d 195, 207 n.4 (3d Cir. 2008)).  Both Judge Baylson and Judge Kearney have held that it would be inappropriate for a district court judge to create a private right of action under the Pennsylvania Constitution where neither the Pennsylvania legislature nor a federal court of appeals has recognized one.  See Farrell v. Cnty. of Montgomery, No. 05-3593, 2006 WL 166519, at *3 (E.D. Pa. Jan. 18, 2006)

36

(Baylson, J.); Anderson v. Perez, No. 14-6747, 2015 WL 5013704, at *5 (E.D. Pa. Aug. 24, 2015) (Kearney, J.).  The Court agrees with the Third Circuit and Judges Baylson and Kearney, and will decline to create a private right of action under the Pennsylvania Constitution where one has not already been recognized by an authoritative court.

Accordingly, the Court will grant the DA Defendants' motion to dismiss Counts VIII and IX of Plaintiff's Fourth Amended Complaint.

## V.    LEAVE TO AMEND

Leave to amend a complaint "shall be freely given when justice so requires."  Foman v. Davis, 371 U.S. 178, 182 (1962). However, a court may refuse to grant leave to amend a complaint where amendment would be futile.  Phillips v. Cnty. Of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008) ("[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile.").

Plaintiff has amended his complaint once as of right. Plaintiff has also amended his complaint three additional times, in an attempt to cure the deficiencies identified by the Court on the record at two separate hearings on motions to dismiss Plaintiffs' previous complaints.  Despite the Court's detailed

instructions to Plaintiff's counsel at the last hearing regarding the deficiencies in the Third Amended Complaint, Plaintiff still has not added sufficient allegations to state a claim with respect to any of his claims against the City and the DA Defendants.  As Plaintiff has already unsuccessfully amended his complaint multiple times with respect to the claims at issue in this motion, twice with the assistance of counsel, further amendment would be futile.

## VI.  CONCLUSION

For the reasons stated above, the Court will grant the City Defendants' motion to dismiss and the DA Defendants' motion to dismiss, and dismiss all claims in Plaintiff's Fourth Amended Complaint against the City and the DA Defendants with prejudice. Therefore, the case shall proceed solely against Detective Hammond and Officer Carter.

An appropriate order follows.