IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SYLVESTER EKWUNIFE,                     :        CIVIL ACTION
                                        :        NO. 16-0148
            Plaintiff,                  :
                                        :
      v.                                :
                                        :
CITY OF PHILADELPHIA, et al.,           :
                                        :
            Defendants.                 :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              December 11, 2017


        Plaintiff Sylvester Ekwunife ("Plaintiff") brought
this suit against the City of Philadelphia, the former
Philadelphia District Attorney, a former assistant district
attorney, and two individual police officers following his
three-year detention on the basis of sexual assault allegations
that were later withdrawn.  Plaintiff brings claims pursuant to
42 U.S.C. § 1983 for false arrest, false imprisonment, malicious
prosecution, failure to intervene, and conspiracy in violation
of 42 U.S.C. § 1985, and a state law claim for intentional
infliction of emotional distress, alleging that there was no
probable cause to arrest, imprison, or prosecute him, and that
the defendants knew or should have known that the sexual assault
allegations were fabricated.  All of the defendants except the

individual police officers filed motions to dismiss Plaintiff's claims, which the Court granted. The two remaining defendants now move for summary judgment. Plaintiff opposes the motion.

For the reasons that follow, the Court will grant Defendants' motion for summary judgment.

## I.    FACTUAL BACKGROUND[1]

In early December 2011, Sharon McFayden and her daughter, K.R., Plaintiff's step-grandchild, who was 11 years old at the time, walked into the Special Victim's Unit ("the SVU") of the Philadelphia Police Department and told Defendant Detective Laura Hammond ("Detective Hammond") that K.R. had been sexually assaulted. See Hammond Dep. at 8:11-21, June 9, 2017, ECF No. 47-9. At the time, Detective Hammond documented the complaint via computer, and a forensic interview was later arranged with the Philadelphia Children's Alliance ("the PCA"). Id. at 9:18-10:22.

On December 21, 2011, the PCA interviewed K.R. and her mother, McFayden, regarding the alleged sexual assault. See Forensic Interview Summary ("PCA Report") at 1, Defs.' Mot.

---

[1]    The facts are presented in the light most favorable to Plaintiff, the non-moving party. As Plaintiff's opposition to Defendants' motion for summary judgment does not contain any citations to the record, affidavits, declarations, or other supporting factual materials, the facts set forth in this memorandum are taken solely from the documents Defendants have filed in support of their motion.

Summ. J. ("Mot.") Ex. 1, ECF No. 47-1. The PCA first interviewed McFayden, and then interviewed K.R. See id. at 3-4. According to the PCA's summary of the December 21, 2011 interview with McFayden, McFayden reported that on December 3, 2011, K.R. told her that Plaintiff, K.R.'s step-grandfather, had raped her. See id. at 2. McFayden explained that when K.R. first told her about the alleged rape, K.R. would not answer questions about when the alleged abuse occurred. See id. McFayden further stated that the morning after K.R. reported the rape to her, McFayden took K.R. to the hospital, where she was examined, and no signs of physical trauma were found. See id. Regarding the amount of contact K.R. would have had with Plaintiff during K.R.'s lifetime, McFayden told the PCA interviewer that K.R. had lived with Plaintiff until she was two years old, and thereafter, up until 2007, K.R. visited Plaintiff nearly every weekend, including overnight visits. See id.

The PCA separately interviewed K.R., who reported that Plaintiff anally and vaginally raped her when she was three or four years old. See id. at 5. K.R. told the interviewer that Plaintiff told K.R. he would kill her if she told anyone about the abuse. See id.

Under the PCA's general policy, PCA interviews are watched through closed circuit television by a police officer from the SVU and by a caseworker from the Philadelphia

Department of Human Services ("DHS"). See Mot. Ex. 2 at 2, ECF No. 47-2. The interview is also taped for later viewing by a prosecutor from the Philadelphia District Attorney's Office ("the D.A.'s Office"). See id. In this case, Detective Kim Boston ("Detective Boston") observed the PCA interview in place of Detective Hammond. See PCA Report at 2.

Following the PCA interview, Detective Hammond, who was not present at the interview, filled out an affidavit in support of an arrest warrant. See Hammond Dep. at 10:13-24. Detective Hammond testified at her deposition that she based the affidavit on (1) the video of the PCA interview; (2) the written summary of the PCA interview; and (3) an interview with McFayden on January 28, 2012. See id. at 10:13-11:2; 15:13-16:4.

In Detective Hammond's affidavit of probable cause, Plaintiff's name, social security number, and date of birth were correct. See Aff. Probable Cause at 1, Mot. Ex. 5, ECF No. 47-5. However, Plaintiff's race and gender were entered incorrectly: Plaintiff was identified as a white woman instead of an African-American man. See id. This misinformation was repeated on the warrant itself. See Warrant of Arrest, Mot. Ex. 5, ECF No. 47-5. Detective Hammond subsequently appended information to Plaintiff's arrest report stating "Defendant's race and sex was entered in error, please ensure corrections." Phila. Police Dept. Arrest Report at 2, Mot. Ex. 5, ECF No. 47-

4

5.  Defendant Police Officer Joseph Carter ("Officer Carter") executed the arrest warrant and arrested Plaintiff at his home on February 27, 2012.  See id. at 1-2.  It is unclear from the record whether Detective Hammond's correction to the arrest report was made before or after Plaintiff's arrest.

Plaintiff alleges that he was incarcerated for three years pending trial.  See Fourth Am. Compl. ("FAC") ¶¶ 2, 54, ECF No. 32.  In January 2015, on the morning of the trial, K.R. recanted the majority of her allegations against Plaintiff, except her allegation that Plaintiff had digitally penetrated her on one occasion when she was five years old.  See Mot. Ex. 4 at 4, ECF No. 47-4.  The D.A.'s Office subsequently dropped the charges and Plaintiff was released from incarceration less than a week later.  See Ekwunife Dep. at 48:14-17, June 9, 2017, ECF No. 47-8.

According a report prepared by DHS dated January 14, 2015, K.R. later explained that her mother had told her to lie, and to conflate Plaintiff's actions with those of another relative, who had raped K.R. on numerous occasions when she was in third and fourth grade.  See Report of Suspected Child Abuse at 2-3, Mot. Ex. 4, ECF No. 47-4.  K.R. reported that her mother told her to lie and state that Plaintiff committed all of the abuse against her, because the other relative who raped her was a minor and the accusations would "ruin his life."  Id. at 2.

## II.  PROCEDURAL HISTORY

Plaintiff filed an initial pro se complaint on January 21, 2016, asserting claims against the City of Philadelphia ("the City") and the D.A.'s Office.  ECF No. 3.  The Court dismissed Plaintiff's claims against the D.A.'s Office pursuant to 28 U.S.C. § 1915(e), explaining that (1) a district attorney's office is not an "entity" for purposes of 42 U.S.C. § 1983 and therefore is not susceptible to suit, and (2) the doctrine of absolute immunity shields prosecutors from liability related to their official acts.  ECF No. 2.

Plaintiff amended his complaint on February 10, 2016. ECF No. 4.  Plaintiff's amended complaint brought only one claim, the violation of Plaintiff's due process rights under the Fourteenth Amendment, and named only three defendants: the City, Former Assistant District Attorney Heba Gore ("Former ADA Gore"), individually and as an official, and Detective Hammond, individually and as an official.  Id.  On March 1, 2016, the Court issued an order dismissing Plaintiff's claims against Former ADA Gore pursuant to 28 U.S.C. § 1915(e) under the doctrine of absolute prosecutorial immunity.  ECF No. 5.

On May 11, 2016, the City filed a motion to dismiss Plaintiff's amended complaint.  ECF No. 9.  On June 27, 2016, after Plaintiff had retained counsel and following a hearing, the Court granted Defendants' motion to dismiss without

prejudice, allowing Plaintiff leave to amend his complaint and add additional defendants. See ECF No. 16. Plaintiff filed a second amended complaint on July 18, 2016, ECF No. 18, followed by a third amended complaint on July 19, 2016, ECF No. 19. The third amended complaint added Officer Carter and Former District Attorney Seth Williams ("Former DA Williams") as defendants, and added back Former ADA Gore. See id. Defendants filed two motions to dismiss the third amended complaint, which the Court granted on October 17, 2017, dismissing Plaintiff's claims against all defendants without prejudice and with leave to amend. See ECF No. 31.

On November 3, 2016, Plaintiff filed a Fourth Amended Complaint, bringing claims for violation of due process and failure to train (Counts I and II), malicious prosecution (Count III), false arrest and false imprisonment (Count IV), failure to intervene (Count V), failure to investigate (Count VI), conspiracy (Count VII), intentional infliction of emotional distress (Count VIII), and false arrest and false imprisonment in violation of the Pennsylvania Constitution (Count IX). ECF No. 32. Plaintiff seeks compensatory and punitive damages in the amount of $15 million. Id. ¶ 62.

On December 2, 2016, Former ADA Gore and Former DA Williams ("the DA Defendants") moved to dismiss Plaintiff's Fourth Amended Complaint. ECF No. 34. On December 6, 2016, the

City, Detective Hammond, and Officer Carter moved to dismiss all claims against the City. ECF No. 35. The Court granted both motions, dismissing Plaintiff's claims against the DA Defendants and the City with prejudice. ECF No. 40.

On July 26, 2017, the two remaining defendants, Detective Hammond and Officer Carter, filed a motion for summary judgment. ECF No. 47. Plaintiff filed a response in opposition on August 9, 2017. ECF No. 48. The Court is now ready to rule on the motion.

### III. LEGAL STANDARD

Summary judgment is awarded under Federal Rule of Civil Procedure 56 when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Liberty Mut. Ins. Co. v. Sweeney, 689 F.3d 288, 292 (3d Cir. 2012). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine"

if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views all facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party, who must "set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 250.

## IV. DISCUSSION

Plaintiff brings claims against Detective Hammond and Officer Carter for (1) malicious prosecution (Count III); (2) false arrest and false imprisonment (Count IV); (3) failure to intervene (Count V); (4) conspiracy in violation of 42 U.S.C. § 1985 (Count VII); (5) intentional infliction of emotional distress (Count VIII); and (6) false arrest and false

imprisonment in violation of the Pennsylvania Constitution (Count IX).[2] See FAC, ECF No. 32.

Defendants argue that all of Plaintiff's claims fail because (1) Plaintiff was arrested with probable cause; (2) Officer Carter arrested Plaintiff pursuant to a facially valid warrant; (3) Plaintiff has not met the standard for an intentional infliction of emotional distress claim; and (4) Defendants are entitled to qualified immunity. See Defs.' Mem. Law. Support Mot. Summ. J., ECF No. 47.

Plaintiff's response in opposition to Defendants' motion does not include a single citation to the record in this case, as required by Federal Rule of Civil Procedure 56(c). See Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence . . . of a genuine dispute . . . .").

Instead, Plaintiff's response contains numerous unsupported assertions of fact, and identifies other facts that "could be disputed," without any citation to the record. See

_____

[2]     In his opposition to the motion for summary judgment, Plaintiff argues that Defendants' motion ignores Plaintiff's claims for violation of his right to due process under the Fourteenth Amendment (Counts I and II). See Pl.'s Opp. at 3-6, ECF No. 48. However, those claims do not mention Detective Hammond or Detective Carter, and instead refer only to the actions of the DA Defendants and the City. See FAC ¶¶ 25-36.

Pl.'s Resp. Opp. Mot. Summ. J. ("Pl.'s Opp."), ECF No. 48.
Plaintiff also asserts that the summary judgment standard
articulated by Defendants – which is correct – is "inaccurate,"
because in order to defeat a motion for summary judgment, a
"plaintiff does not have to present affirmative evidence, but
instead must show that genuine issues of material facts [sic]
exist." Id. at 3.

Plaintiff misunderstands his obligation in response to
Defendants' motion for summary judgment. Defendants' motion
argues that there are no genuine issues of material fact,
relying on evidence from the record to demonstrate that
Plaintiff cannot establish the essential elements of any of his
claims. If Defendants meet their burden to demonstrate that no
reasonable jury could find for Plaintiff even after making all
reasonable inferences in Plaintiff's favor, the burden shifts to
Plaintiff to "set forth specific facts showing there is a
genuine issue for trial." Anderson, 477 U.S. at 250. Thus,
Plaintiff is incorrect that he does not need to present
affirmative evidence. After Defendants have asserted that there
are no genuine issues of material fact with respect to
Plaintiff's claims – as they have done here – Plaintiff is
required to identify, by citation to the record in this case,
facts indicating a genuine issue of material fact.

Under Rule 56(e), where a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order. <u>See</u> Fed. R. Civ. P. (56)(e).

As Plaintiff is represented by counsel, the Court will consider the facts presented by Defendants – which Plaintiff fails to properly address - undisputed for purposes of the motion. For the reasons set forth below, Defendants' motion and supporting materials, including the facts considered undisputed, show that Defendants are entitled to summary judgment on all claims.

A.  <u>False Arrest and False Imprisonment (Count IV)</u>

Plaintiff's false arrest and false imprisonment claims both require Plaintiff to establish the absence of probable cause: first, that there was no probable cause to arrest him, and second, that after he was arrested, there was no probable cause to imprison him. <u>See</u> <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 636 (3d Cir. 1995). "Probable cause to arrest exists when

the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000) (quoting Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995)). This standard "does not require that officers correctly resolve conflicting evidence or that their determinations of credibility were, in retrospect, accurate." Wright v. City of Phila., 409 F.3d 595, 603 (3d Cir. 2005).

The existence of probable cause in a suit filed under 42 U.S.C. § 1983 is usually a question of fact for the jury. See Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000). "However, a district court may conclude 'that probable cause exists as a matter of law if the evidence, viewed most favorably to [the] [p]laintiff, reasonably would not support a contrary factual finding,' and may enter summary judgment accordingly." Id. at 788-89 (quoting Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997)).

Because the Supreme Court has "prescribed a 'totality-of-the-circumstances approach' to the probable cause determination," the presence of conflicting evidence does not necessarily preclude a finding that there are no genuine disputes as to any material fact. Dempsey v. Bucknell Univ.,

13

834 F.3d 457, 467-68 (3d Cir. 2016) (quoting Illinois v. Gates, 462 U.S. 213, 230-31 (1983)). When evaluating probable cause at the summary judgment stage, a court must examine all facts an officer would have been able to consider, and "assess whether any reasonable jury could conclude that those facts, considered in their totality in the light most favorable to the nonmoving party, did not demonstrate a 'fair probability' that a crime occurred." Id. at 468. Only if this standard is met "would the existence of conflicting evidence rise to the level of a 'genuine dispute as to any material fact' such that summary judgment would be inappropriate." Id.

        Defendants argue that there is no genuine dispute that probable cause to arrest Plaintiff existed as a matter of law, because (1) K.R.'s account of the events was sufficient on its own to create probable cause; (2) K.R.'s account of the events as provided to the PCA was consistent with her report to DHS and the statements her mother gave to the PCA and Detective Hammond; (3) it is undisputed that Plaintiff had access to K.R. at various times in her life; and (4) there is no evidence that Detective Hammond knew that K.R. was unreliable. See Defs.' Mem. at 5.

        In response, Plaintiff argues, without factual support, that there is a genuine dispute as to whether there was probable cause to arrest Plaintiff because (1) it is "undisputed

that Detective Hammond knew that an officer from the Children's Services named Melis[s]a Hampton . . . stated that she did not believe [K.R.'s] story;" (2) it is "undisputed that Detective Hammond knew that the witness she interviewed before preparing the affidavit for probable cause suffered from schizophrenia and paranoia, and was otherwise mentally ill;" (3) Detective Hammond "admitted that she did not interview either the Plaintiff nor the sole witness"; and (4) the affidavit of probable cause misidentified Plaintiff as a white woman, as opposed to an African-American man.  Pl.'s Opp. at 4-5.

        Plaintiff further asserts that the following facts "could be disputed": (1) when K.R. recanted her story, and whether it was recanted prior to the drafting of the affidavit of probable cause; (2) whether Detective Hammond knew that the story was recanted prior to preparing the affidavit of probable cause; and (3) whether Defendants knew or should have known that K.R.'s allegations were false based on Hampton's statement that she did not believe the story and the fact that K.R.'s mother suffered from mental illness.  Id. at 5.

        Detective Hammond testified at her deposition that she prepared the affidavit of probable cause after reviewing the video and written summary of the PCA interview, in which K.R. provided thorough, detailed allegations of the abuse.  Plaintiff has not introduced any evidence contradicting Detective

Hammond's sworn testimony that her affidavit of probable cause was based on the allegations the victim, K.R., set forth during the PCA interview.

The Third Circuit has explained that "a positive identification by a victim witness, without more, would usually be sufficient to establish probable cause," in the absence of "[i]ndependent exculpatory evidence or substantial evidence of the witness's own unreliability that is known by the arresting officers" that outweighs the identification. Wilson, 212 F.3d at 790. Thus, in absence of any other evidence, K.R.'s positive identification of Plaintiff and detailed description of the alleged abuse were sufficient on their own to establish probable cause.

Based on the record, Detective Hammond did not have "substantial evidence" of K.R.'s unreliability. K.R. provided detailed, anatomically correct descriptions of her abuse, which matched the information provided to DHS and the hospital. The PCA interview summary specifically addressed the possibility that the allegations were not true, noting in the section entitled "[p]ossible motive to fabricate or exaggerate" that:

> DHS reported that [K.R.]'s father, Daniel Rosario, told her that Ms. McFayden coaches [K.R.] and her other children to say things in order to get her way, and that [K.R.] tells stories to get attention. DHS did not specify why Mr. Rosario believes this information.

PCA Report at 6.

However, the PCA interviewer ultimately discounted
that possibility, noting that "[K.R.] did not appear to have a
motivation to fabricate or exaggerate the current allegations
during her PCA interview and did not seem to display signs of
coaching." Id. at 6-7. Detective Hammond, upon review of this
report and the video of the interview, was entitled to discount
the possibility of fabrication as well. The comments in the PCA
report, which summarized the DHS agent's account of her
conversation with K.R.'s father, do not constitute substantial
evidence that K.R. was unreliable. Plaintiff's unsupported
assertion that Detective Hammond knew about K.R.'s mother's
mental health issues prior to the arrest, even if true, also
does not negate a finding of probable cause, because the mental
state of the victim's mother does not constitute substantial
evidence that the victim herself was unreliable.

Nor is there any evidence that K.R. recanted her story
prior to Plaintiff's arrest. Although Plaintiff argues that the
timing of K.R.'s recantation of her allegations "could be
disputed," Detective Hammond testified that the allegations were
recanted on the morning of Plaintiff's trial, several years
after Plaintiff was arrested. Detective Hammond's testimony is
corroborated by (1) the DHS report of suspected child abuse,

dated January 14, 2015, which states that K.R. had first disclosed "last week" that another relative, and not Plaintiff, was responsible for the rape; and (2) an email from Assistant District Attorney Elizabeth Fisher to Detective Boston, dated January 8, 2015, stating that K.R. recanted on the morning of trial. See ECF No. 47-4 at 1-4. Plaintiff has not provided any facts supporting his assertion that K.R. "could" have recanted her allegations earlier. As Plaintiff has not properly addressed the facts set forth by Defendants establishing that K.R. did not recant her allegations until long after Plaintiff was arrested, the Court will consider that fact undisputed.

In sum, Plaintiff has not pointed to any evidence in the record establishing that Detective Hammond knew or had any reason to know that K.R.'s allegations – which were alone sufficient to establish probable cause - were false at the time of arrest. Although Plaintiff speculates about what Detective Hammond may have known prior to drafting the affidavit of probable cause, Plaintiff does not identify a single fact in the record supporting that speculation. Plaintiff has therefore failed to meet his burden to demonstrate that there is a genuine issue of material fact regarding whether there was probable cause to arrest him.

In addition to claiming that Detective Hammond knew or should have known that the allegations were false, Plaintiff

also argues that there was not probable cause to arrest him because Detective Hammond's affidavit, and therefore the arrest warrant itself, stated that the person to be arrested was a "white female." See Pl.'s Opp. at 6-8. Plaintiff notes that, although the clarification in the arrest report states that Plaintiff's race and gender were incorrect, the clarification did not bear a judge's signature. See id. at 6. As a result, according to Plaintiff, "the arrest warrant signed by the Magistrate Court could not have been referring to this Plaintiff." Id.

In order to prevail on a claim that mistakes in an affidavit in support of an arrest warrant prevented a magistrate judge from properly evaluating probable cause, a plaintiff must "make two showings: first, that the officer, with at least reckless disregard for the truth, 'made false statements or omissions that create[d] a falsehood in applying for a warrant,' and second, that those assertions or omissions were 'material, or necessary, to the finding of probable cause.'" Dempsey, 834 F.3d at 468-69 (quoting Wilson, 212 F.3d at 786-87). The Third Circuit has outlined the proper procedure for analyzing this type of claim:

> [T]he the district court must identify any
> improperly asserted or omitted facts and, if
> it determines there were reckless
> misrepresentations or omissions, "excise the
> offending inaccuracies and insert the facts

recklessly omitted" from the affidavit and
assess whether the reconstructed affidavit
would establish probable cause. If it would,
the plaintiff's claim fails because "even if
there had not been omissions and
misrepresentations" in the affidavit
presented to the magistrate judge, there
would have been probable cause for the
charges against the plaintiff.

Id. at 470 (quoting Wilson, 212 F.3d at 789) (internal citations
omitted).

        Here, Detective Hammond's affidavit (1) accurately
summarized K.R.'s allegations, including K.R.'s identification
of Plaintiff and her detailed description of the alleged rape;
and (2) included Plaintiff's full name, birthdate, social
security number, and relationship to the victim.  However,
Plaintiff's race, gender, and address were listed incorrectly.
If the affidavit were reconstructed to remove those inaccuracies
and correctly identify Plaintiff as an African-American man at
the correct address, the reconstructed affidavit would establish
probable cause, because it detailed the victim's allegations.
See Dempsey, 834 F.3d at 468-70.  Therefore, Plaintiff's claim
that the misrepresentations in the affidavit defeated probable
cause fails.

        For the same reasons, there is no evidence in the
record that there was not probable cause to imprison Plaintiff
following his arrest.  Again, Plaintiff has not pointed to any
facts in the record that contradict Detective Hammond's

testimony that K.R. did not recant her allegations until the day of Plaintiff's trial, which is corroborated by contemporaneous emails and internal reports.  As there is no evidence that K.R.'s accusation was recanted before the morning of Plaintiff's trial, K.R.'s accusation against Plaintiff provided probable cause as a matter of law for Plaintiff's imprisonment from the time of his arrest until his trial date.

As the absence of probable cause is a necessary element of Plaintiff's claims for false arrest and false imprisonment, the Court will grant Defendants' motion for summary judgment with respect to Count IV.

B.   Malicious Prosecution (Count III)

Plaintiff brings a claim for malicious prosecution in violation of 42 U.S.C. § 1983 against Detective Hammond and Officer Carter.  To prevail on this claim, Plaintiff must demonstrate that (1) the defendants initiated a criminal proceeding, (2) the criminal proceeding ended in his favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing Plaintiff to justice; and (5) Plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  DiBella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005).

Defendants argue that Plaintiff has not established the first element, because a plaintiff can only proceed against a police officer under a malicious prosecution theory "if the officer knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion," and there is no such evidence here. Defs.' Mem. at 9 (quoting Domenech v. City of Phila., No. 06-1325, 2009 WL 1109316, at *8 (E.D. Pa. Apr. 23, 2009)). Defendants also argue that Plaintiff has offered no evidence, aside from speculation, establishing that Defendants acted maliciously or for a purpose other than bringing him to justice, the fourth element of Plaintiff's malicious prosecution claim. See id. at 9-10.

For the reasons discussed above, Plaintiff has pointed to no evidence of record that Detective Hammond or Officer Carter knowingly provided false information to the prosecutor or otherwise interfered with her informed discretion. Detective Hammond testified that she prepared an affidavit in support of the arrest warrant based on her review of the video and report from K.R.'s interview, and there is no evidence that she had any knowledge that K.R.'s allegations were fabricated until the day of Plaintiff's criminal trial. Therefore, Plaintiff's malicious prosecution claim fails as a matter of law.

C.    Failure to Intervene (Count V)

Plaintiff alleges that Defendants "failed to intervene to correct the false information that was used in this case to arrest and detain [Plaintiff]," in violation of 42 U.S.C. § 1983.  FAC ¶ 49.  In their motion for summary judgment, Defendants argue that Plaintiff's claim fails as a matter of law because he cannot show that (1) any defendant knew that his constitutional rights were being violated; or (2) any defendant had a reasonable opportunity to intervene to stop the violation, but did not do so.  See Defs.' Mem. at 12-13.

In response, Plaintiff argues that Officer Carter failed to intervene in the violation of Plaintiff's rights because "any reasonable person" would have known that the arrest warrant, which stated that the person to be arrested was a white woman, could not provide probable cause to arrest Plaintiff, an African-American man.  Pl.'s Opp. at 9-10.

A police officer who "fails or refuses to intervene when an constitutional violation such as an unprovoked beating takes place in his presence" is only liable under § 1983 if he had a "realistic and reasonable opportunity to intervene." Smith v. Mensinger, 293 F.3d 641, 651 (3d Cir. 2002) (quoting Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986)).  For the reasons discussed above, the incorrect information in the affidavit and arrest warrant did not defeat probable cause to

23

arrest Plaintiff.  As Plaintiff does not identify any evidence
in the record demonstrating a genuine issue of material fact
with respect to whether Defendants knew Plaintiff's
constitutional rights were being violated, Plaintiff's failure
to intervene claim fails as a matter of law.


     D.    <u>Conspiracy (Count VII)</u>

       Plaintiff alleges that Defendants "conspired with the
agents of the Department of Human Services to bring false arrest
and false imprisonment and malicious prosecution against
[P]laintiff," in violation of 42 U.S.C. § 1985.  FAC ¶ 52.

       "Section 1985(3) permits an action to be brought by
one injured by a conspiracy formed 'for the purpose of
depriving, either directly or indirectly, any person or class of
persons of the equal protections of the laws, or of equal
privileges and immunities under the laws.'"  <u>Thomas v. Indep.
Twp.</u>, 463 F.3d 285, 298 (3d Cir. 2006) (quoting <u>Farber v. City
of Paterson</u>, 440 F.3d 131, 134 (3d Cir. 2006)).  A plaintiff
asserting a conspiracy claim under 42 U.S.C. § 1985 must
establish "(1) a conspiracy; (2) motivated by a racial or class
based discriminatory animus designed to deprive, directly or
indirectly, any person or class of persons [of] the equal
protection of the laws; (3) an act in furtherance of the
conspiracy; and (4) an injury to person or property or the

deprivation of any right or privilege of a citizen of the United States." Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997).

Defendants argue that Plaintiff's conspiracy claim fails as a matter of law because there are no facts in the record regarding any agreement or understanding among the defendants to violate his constitutional rights, as required to support a § 1985 conspiracy claim. See Defs.' Mem. at 13.

Defendants are correct. Plaintiff does not address the conspiracy claim in his opposition to Defendants' motion for summary judgment, and has therefore failed to meet his burden to "set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 250. In order to survive a motion for summary judgment on a Section 1985 claim, a plaintiff must "put forward facts that would allow a reasonable factfinder to conclude that [the defendants] formed a conspiracy to deprive him of his rights." Estate of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 802 (3d Cir. 2010). Plaintiff has not done so. Accordingly, Plaintiff's § 1985 conspiracy claim fails as a matter of law.

E.    Intentional Infliction of Emotional Distress (Count VIII)

Under Pennsylvania law, a plaintiff cannot prevail on a claim for intentional infliction of emotional distress unless

the defendant's conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1988) (quoting Buczek v. First Nat'l Bank of Mifflinton, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987)). Further, "[a] plaintiff seeking to establish intentional infliction of emotional distress must also support his claim with 'competent medical evidence,' because 'it is unwise and unnecessary to permit recovery to be predicated on an inference based on the defendant's 'outrageousness' without expert medical confirmation that the plaintiff actually suffered the claimed distress.'" Bock v. CVS Pharmacy, Inc., No. 07-412, 2008 WL 3834266, at *2 (E.D. Pa. Aug. 14, 2008) (quoting Kazatsky v. King David Mem'l Park, Inc., 527 A.2d 988, 995 (Pa. 1987)).

Defendants argue that Plaintiff's claim for intentional infliction of emotional distress fails because Plaintiff admitted in his deposition that he never received any kind of psychological or medical care from any doctor concerning the arrest. See Defs.' Mem. at 14. In response, Plaintiff argues, without any citation to any evidence, that his claim does not fail because "[t]he truth of the matter is that Plaintiff continues to suffer emotional distress stemming from the underlying arrest." Pl.'s Opp. at 10. This assertion,

devoid of any factual support at all, does not constitute the "competent medical evidence" Plaintiff is required to provide in order to establish a genuine dispute with respect to whether he has suffered the claimed distress.  See Kazatsky, 527 A.2d at 995.  Therefore, Plaintiff's intentional infliction of emotional distress claim fails as a matter of law.

### F.  False Arrest and False Imprisonment in Violation of the Pennsylvania State Constitution (Count IX)

As explained in the Court's previous ruling on Defendants' motion to dismiss, there is no private right of action for a violation of the Pennsylvania Constitution.  See Ekwunife v. City of Phila., 245 F. Supp. 3d 660, 678 (E.D. Pa. 2017) (citing Gary v. Braddock Cemetery, 57 F.3d 195, 207 n.4 (3d Cir. 2008) ("The prevailing view is that Pennsylvania does not recognize a private right of action for damages in a suit alleging violation of the Pennsylvania Constitution.")).  Therefore, Plaintiff's claims under the Pennsylvania Constitution fail as a matter of law.

### V.  CONCLUSION

For the reasons stated above, the Court will grant Defendants' motion for summary judgment, enter judgment for Defendants and against Plaintiff, and close the case.

An appropriate order follows.